ALEXANDER CONN

*v.*

THE PEOPLE OF THE STATE OF ILLINOIS.

*Filed at Springfield March 27, 1886.*

1.  CRIMINAL LAW — *assault with intent to murder — of the intent, and proof thereof—when malice presumed.* Where an act is committed deliberately, and is likely to be attended with dangerous consequences to the life of another, malice may be presumed. So if one shoots a loaded pistol or other fire-arm in the direction of another under such circumstances as to show a reckless indifference as to the consequences, and the act is likely to result in the death of the person toward whom the shot is fired, the law will imply malice, and the party so shooting may be convicted of an assault with intent to murder.

2.  To convict one of an assault with a loaded revolver, with intent to kill and murder, the criminal intent must be shown; but direct and positive testimony is not required to prove such intent. It may be presumed from facts and circumstances shown by the evidence.

3.  So if a person fires a revolver at or toward another, either with malice prepense or with a total disregard of human life, he may be convicted of an assault with intent to kill and murder the person so attacked; and in such case it makes no difference whether such person was struck by the shot or not.

4.  SAME—*evidence—want of materiality.* On the trial of a party for an assault with intent to kill and murder, it was shown by a witness for the People, that defendant, while standing in front of witness' residence, talking with B., her husband, called to the person assaulted as he was passing the other side of the street, and demanded that he come over and pay the $14 he owed him, and on his refusing to come over, shot at him. The defendant

offered to prove by another witness that just before defendant started to the place where he fired the shot, he said he was going over to B.'s to collect $14 that B. owed him, which the court refused to allow: *Held*, that the offered evidence was not of such significance as to constitute material error in refusing to admit it.

WRIT OF ERROR to the Circuit Court of Macon county; the Hon. JAMES F. HUGHES, Judge, presiding.

Messrs. WALKER & WALKER, and Mr. W. C. JOHNS, for the plaintiff in error:

As to granting new trial on the facts in a criminal case, see *Mooney* v. *People*, 111 Ill. 389; *Clark* v. *People*, id. 404.

Defendant offered to prove by Gordon what Conn said as to his object in going over to Biggs' house on that day, and to prove that immediately before Conn left Gordon's house he said he was going over to Biggs' to collect $14 that Biggs owed him. The rule that a party can not manufacture evidence in his favor, has no proper application, for the reason there was no evidence of any deliberation whatever. It also tended to explain the testimony of Mrs. Biggs as to the remark about the $14. It is worthy of notice that these declarations were made before the transactions to which they are claimed to relate. *Poole* v. *Bridges*, 4 Pick. 378; *Allen* v. *Duncan*, 11 id. 308; *Hayans* v. *Butler*, 24 id. 242.

Declarations of a party made at the time of a transaction, and expressive of its character, motive or object, are regarded as verbal acts, tending to indicate a present purpose and intention, and are therefore admitted in proof like other material facts. But where they are merely narrative of a past occurrence, they can not be received as proof of such occurrence. They must be concomitant with and so intimately connected as to be regarded as part of the transaction. *Comfort* v. *People*, 54 Ill. 403; 1 Greenleaf on Evidence, sec. 108, and notes; *Croff* v. *Ballenger*, 18 Ill. 200; *Lander* v. *People*, 104 id. 205; Roscoe's Dig. Crim. Evidence, 20, 21; Wharton on Crim. Evidence, sec. 263, *et seq.*

The element of intention to kill is entirely omitted from each of the instructions complained of. If the sixth instruction had told the jury that the law presumed an intention to kill from the kind of shooting described in it, and had not expressly declared that the defendant "is guilty of an assault to commit murder," the most serious objection to it would have been removed. It was error to assume in it that Conn was guilty of the offence. *Kinney* v. *People*, 108 Ill. 525; *Barr* v. *People*, 113 id. 471.

Mr. EDWARD P. VAIL, State's attorney, for the People:

It is not denied that sometimes a declaration made at the time of a relevant act, and which characterizes it or is expressive of its purpose or intention, is admissible, with the proof of the act, as a part of the *res gestæ*. Here the first declaration is not expressive of any act. The instructions stated the law correctly as to the offence charged. *Perry* v. *People*, 14 Ill. 496; *Vandermark* v. *People*, 47 id. 122; *Dunaway* v. *People*, 110 id. 333.

Mr. JUSTICE SHELDON delivered the opinion of the Court:

At the September term, 1885, of the Macon county circuit court, Alexander Conn was convicted of an assault with a deadly weapon with intent to murder John Warnicott, and sentenced to imprisonment in the penitentiary for one year. This writ of error is brought to reverse the judgment. The errors assigned call in question the sufficiency of the evidence, the ruling of the court in rejecting one item of evidence offered by the defendant, and in giving and refusing instructions.

The transaction occurred on Sunday, October 1, 1882, in the village of Mt. Zion, in Macon county. Warnicott testified that as he was passing westerly along the south side of the principal street in the village, he saw the defendant, Conn, and one Biggs, standing on the walk in front of Biggs' house, on the north side of the street; that as he got nearly oppo-

site them he was hailed by Conn, who said, "Come over and pay me what you owe me;" that he answered, "If I owe you anything I will pay you to-morrow,—I don't do business on Sunday;" that he was walking rapidly, and did not stop; heard Conn say something else after witness got west of David Foster's house,—it was "stop him," as if he had said, "I'll stop him," or something of that kind; that he heard a shot, and instantly turned around and saw Conn, still in front of Biggs' house, facing toward witness, with a revolver in his right hand; his hand was down by his side; witness did not stop, but went right on; that he was about one hundred and sixty feet from Conn when the shot was fired; was not hurt, and did not hear a bullet; that his relations with Conn were friendly, and he did not owe him anything.

Mrs. Biggs, who saw the occurrence, testified that Conn was drunk; that when Warnicott was passing on the other side of the street, as he got opposite to Conn, the latter called to Warnicott with an oath, and said, "Come over here and pay me the $14 you owe me," and immediately fired the revolver directly across the street, toward Warnicott; that the revolver was not elevated, but seemed to be on a level, and he steadied himself the instant he shot. David Foster, who lived on the south side of the street, testified that he saw Warnicott coming down the street; Conn said to him, "God damn you, come over and pay me what you owe me, or I will shoot you;" that Warnicott was walking rapidly, and did not stop, and Conn raised his revolver and fired toward Warnicott. The witness Royce testified that about the time Warnicott got as far west as the west line of Foster's lot, Conn fired his revolver in a westerly direction, and it looked to him as if it was about on a level; that Warnicott was in a westerly direction from Conn, and the shot appeared to be fired toward Warnicott. He saw that morning the revolver Conn had; had it in his hand; it was loaded with cartridge; it was pretty near as large as a navy revolver. The witness Scott testified

that he was about one hundred yards west of Warnicott, on the same side of the street; that he saw Conn fire; from where he was, it appeared to be about on a level; the smoke from the revolver went straight out; he could see the revolver; it appeared to be pointed in the direction of Warnicott. These were witnesses on the part of the People. Upon the part of the prisoner two witnesses testified—Mr. and Mrs. Gordon. Mrs. Gordon says: Saw Conn fire the revolver; it was elevated in the air when fired, and in the direction of David Foster's house. When Conn fired, he raised the revolver from his side and swung it around in this way, (witness describing by her hand a circular motion.) She says she and her husband were the nearest to where Conn stood of any of the witnesses for the People, except Mrs. Biggs; that if Conn said anything to Warnicott, or Warnicott to him, she did not hear it. Mr. Gordon says: Conn fired in the direction of Foster's house, and elevated in the air to such an extent that the ball would have gone at least forty feet above the head of a man on the walk across the street in the direction the revolver was pointed; that if Warnicott said anything, or if Conn said anything to Warnicott, except "halloo," it was in such a low tone of voice he did not or could not hear it. He says Conn was staggering drunk, and that the pistol was loaded with cartridges and leaden balls; that it was a "pretty big revolver," a smaller size than a navy.

There was some disagreement in the statements of the witnesses, but it was peculiarly for the jury to weigh and pass upon their testimony, after considering the means of observation of the respective witnesses, and the circumstances in evidence going to affect their credibility. If credence was given to the testimony on the part of the People, it was quite sufficient to support the verdict. We are unable to say the verdict was not warranted by the evidence.

The excluded evidence objected to, was an offer to prove by the witness Gordon that immediately before Conn left

Gordon's house to go across the street to Biggs' house, Conn said he was going over to Biggs' to collect $14 that Biggs owed him. This was not a declaration which accompanied the act which was being investigated, but was made some time before,—how long before not distinctly appearing. If relevant, the offered evidence was not at all of a significant character. · Its only bearing, that we perceive, would be in tending to show Mrs. Biggs might have been mistaken in understanding the purport of Conn's language, when she says he asked Warnicott for the payment of $14. We find no material error in the rejection of this evidence.

Three instructions given for the People are claimed to be erroneous, which were as follows:

"6.   If the jury believe, from the evidence, beyond a reasonable doubt, that the defendant pointed the revolver at the said John Warnicott, as charged in the indictment, and discharged the same either with malice aforethought or with a reckless and total disregard of human life, and that the use of the said weapon, as used by the said defendant, was likely to kill the said John Warnicott, then the said defendant is guilty of an assault with intent to commit murder.

"7.   To constitute the offence charged in this case, the intent alleged in the indictment is necessary to be shown, but direct and positive testimony is not necessary to prove the intent,—it may be inferred from the facts and circumstances shown by the evidence; and if you believe, from the evidence, beyond a reasonable doubt, that the shooting, as alleged in the indictment, was done deliberately, and was likely to be attended with dangerous consequences, the malice or intent requisite to make out this case as charged will be presumed.

"8. · If you believe, from the evidence, beyond a reasonable doubt, that the defendant fired the revolver either with malice prepense or with a total disregard of human life, as charged in the indictment, then the law is for the People, and it does not make any difference whether the said Warnicott

was struck or not. In either event the jury must find the defendant guilty."

It is believed these instructions state the law with substantial correctness, as it has been held by this court.. In *Perry et al.* v. *The People*, 14 Ill. 496, which was a case of assault with intent to murder, this court say: "At the instance of the prosecution the court instructed the jury that if they believed, from the evidence, that Perry fired the pistol either with malice prepense or a total disregard of human life, then the law is for the People. * * * Where the act is committed deliberately, and is likely to be attended with dangerous consequences, the malice requisite to murder will be presumed. These instructions are broad and general, and predicated upon that principle of law which attributes universal malice to reckless acts of homicide, where no particular motive can be traced. The principle is one well established in the law, and we can not say that it is improperly laid down in the instructions." To the same effect, see *Dunaway* v. *The People*, 110 Ill. 333.

This would seem explicitly to cover and justify the sixth instruction, and the others would follow as consequences from what is asserted in that instruction. It is not a just criticism that the element of intention to kill is omitted from the instructions. The seventh expressly says the intent alleged in the indictment is necessary to be shown, and the others contain the requisite of the proof of facts and circumstances from which the alleged intent might be presumed.

It is said the seventh instruction assumes there was a shooting "as alleged in the indictment." We do not so read that instruction. Nor do we find that either instruction, as is supposed, admits of a conviction on proof simply of deliberately firing the revolver, but it is made a requisite that the shooting should have been "as charged in the indictment,"—that is, toward Warnicott, and that it should have been done with malice prepense, or with a total disregard of human life, or that it was likely to be attended with dangerous consequences.

The defendant asked the court to give eighteen instructions to the jury. Six of them were given, and the others refused. Of the ones given, the first required proof of every material allegation of the indictment, and that if there was a reasonable doubt of any one of the elements necessary to constitute the crime of an assault with intent to murder, the jury must acquit. The sixth likewise required that all the material averments of the indictment should be proved. The third required an acquittal if there was any reasonable hypothesis, deducible from all the evidence, than that of the defendant's guilt. The ninth was that defendant was charged with an assault upon John Warnicott with intent to commit murder, and unless the jury believed, beyond a reasonable doubt, that defendant did make such an assault, their verdict should be not guilty. And the sixteenth was that the defendant must have made an assault with a revolver upon Warnicott.

Without discussing in detail the refused instructions, we deem it enough to say that they were, for the most part, embraced generally, if not specifically, in those which were given for the defendant. Others had no basis in the evidence to support them. The greater part of the refused instructions were but in iteration and variation of the requirement of the intention to murder. The seventh instruction for the People laid down that such intention must be shown, but that direct testimony was not necessary to prove it,—that it might be inferred from facts and circumstances. The eighteenth refused instruction was, that if the shot fired had killed Warnicott, and the killing would not have been murder, but would have been manslaughter, then the jury should acquit. There was nothing in the facts of the case to warrant such an instruction. Upon the whole ruling on instructions we do not find there was any material error.

The judgment must be affirmed.

*Judgment affirmed.*