THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* TEOFIL ROZANSKI, Plaintiff in Error.

*Opinion filed June 24, 1915—Rehearing denied October 6, 1915.*

1. CRIMINAL LAW—*defendant not requesting instruction he is entitled to cannot complain.* If the defendant, under an indictment for assault with intent to murder, is entitled to an instruction that the jury may find him guilty of simple assault he should request such instruction, and in the absence of such request he cannot complain that it was not given.

2. SAME—*when instructions are not erroneous in ignoring the circumstances of assault.* Instructions which merely state, in general terms, the rules of law concerning reasonable doubt which have been declared in criminal cases generally, and which contain no hypothesis of fact, are not erroneous on the ground that they ignore the circumstances of the assault with which the defendant is charged.

3. SAME—*when it is not error to give an instruction authorizing conviction of assault with intent to murder.* It is not error to give an instruction authorizing the jury to find the defendant guilty of assault with intent to murder where the instruction recites all the facts from which the legal conclusion of guilt would necessarily follow, and where the jury are given forms of verdict for assault with intent to murder and assault with intent to do bodily harm.

4. SAME—*malice may be implied as well as express.* Deliberate intention is necessary to constitute express malice, but the law implies malice where no considerable provocation appears or where all circumstances show an abandoned and malignant heart.

5. SAME—*when an instruction as to malice or intention being presumed is not erroneous.* In a prosecution for assault with intent to murder, an instruction is not erroneous which states that intention may be inferred from the facts and circumstances shown by the evidence, and that if the shooting was done and deliberately done, and was likely to be attended with dangerous consequences, then the malice or intention requisite to make out the charge of the indictment would be presumed.

6. SAME—*when instruction is properly refused.* In a prosecution for assault with intent to murder, an instruction is properly refused which directs the jury to find the defendant not guilty although he fired the shots at the prosecuting witness if they were fired without deliberation, thereby ignoring the malice implied by law from want of provocation or circumstances showing an abandoned and malignant heart.

WRIT OF ERROR to the Circuit Court of Washington county; the Hon. GEORGE A. CROW, Judge, presiding.

O'DONNELL & O'DONNELL, for plaintiff in error.

P. J. LUCEY, Attorney General, J. PAUL CARTER, State's Attorney, EUGENE P. MORRIS, and GEORGE P. RAMSEY, for the People.

Mr. JUSTICE CARTWRIGHT delivered the opinion of the court:

At the October term, 1914, of the circuit court of Washington county, the plaintiff in error, Teofil Rozanski, was found guilty by a jury of an assault with intent to murder his father, Frank Rozanski. Motions for a new trial and in arrest of judgment were overruled and he was sentenced to the Southern Illinois penitentiary, at Chester. A writ of error has brought the record to this court for review.

Frank Rozanski lived alone on a farm which had been his homestead but which had been conveyed to his son, Teofil Rozanski, the plaintiff in error, who was bound to furnish him with supplies. After the death of the mother the father and son became embittered against each other

and for about four years were not on speaking terms and there had been lawsuits between them on matters arising out of their contract relations. The defendant lived on another farm about one and a half miles distant, and on December 9, 1913, he and his son Nick Rozanski, about eleven years old, rode from Radom in a wagon with Frank Greskiewicz to his father's home. The defendant and his son got out of the wagon at the end of a lane leading to the residence and went first to where two sons of the defendant were chopping wood in the timber for the father, Frank Rozanski. All four then went to the gate of the yard at the house and the three sons stood by the fence while the defendant went to the house where the trouble occurred. The father, Frank Rozanski, was the principal witness for the People and he testified through an interpreter. His testimony was that it was half-past four in the afternoon, as he was sitting in the kitchen by the stove smoking his pipe, when the defendant came into the room and started a fight; that the defendant did not say anything but threw him down on the floor and grabbed him by the throat; that he got on top of the defendant and struck him several times with a stick of hickory stovewood and took him by the collar and threw him outside on the porch and closed the door; that he said to the defendant, "A straight road for your home;" that he tried to lock the door and while holding it stood alongside the door and the defendant fired several shots through the closed door, and one of the bullets inflicted a flesh wound in his abdomen; that when the shot struck him it began to burn, and he left the door and ran away for his life, and that he did not see the defendant's sons at that time. In riding along the road in the wagon the defendant and his son Nick passed the home of Mike Kujawa, a neighbor, and he saw them get out of the wagon and go up the lane toward the house. The house was in the timber, so that he could not see them when they got there, but about fifteen

268 – 39

minutes after they got out of the wagon he heard five shots close together, and he heard the noise of tramping after the shots were fired. Harve Calloway and M. B. Pawlowski testified that there were five bullet holes through the door, and the lower part of the door was all kicked out, as the witnesses said. The shots were from the outside. The holes showed splinters on the inside and the lower part of the door was driven in from the outside. The wound made by the bullet was about two and a half inches in length, cutting the skin and tissues underneath, but the bullet did not penetrate the abdomen.

The defendant and his three sons testified and each gave the same account of the occurrence. The defendant said that he and his son Nick rode with Frank Greskiewicz from Radom; that they went to the two sons who were chopping wood and all walked to the gate into the yard and he hollered but no one answered; that he knocked on the door and said, "Hello! Pa!" that his father opened the door and had a club in his hand and hit him on the head and struck him several times while he was trying to get up and shoved him over backwards; that the boys jumped over the fence and helped him up and they went home, and that he never had a revolver, did not shoot one or make the holes in the door. Each son testified that the father opened the door and hit the defendant with a piece of stovewood; that the defendant fell down and the father kicked him and threw him off the porch onto the ground; that they jumped over the fence and picked the defendant up and went home; that the defendant did not have a revolver and never had one, and that there was no shooting there. Nick and the defendant's daughter, Maggie, testified that they got home at five o'clock. Theodore Kitkowski, a bailiff, testified that when he served the subpœna on Frank Rozanski he said that he had a club in his hand and his hand on the door, and as the defendant stepped in the door he struck him on the head and would have killed him on the spot.

The father testified to a state of facts which showed the defendant to be guilty, while the defendant and his sons contradicted him and testified that there was no shooting done. The direct testimony on one side or the other as to what occurred was false, and the jury having heard and observed the witnesses and considered their testimony in connection with the other evidence, concluded that the father told the truth. The trial court, with the same opportunities for judging of the credibility of the witnesses, was satisfied with the verdict, and no fact was proved from which we can say that the conclusion was wrong. The shooting certainly took place and was from the outside of the door and the lower panels were broken in from the outside. Mike Kujawa was not shown to have any interest or bias, and he heard the shooting at the time the defendant was at the house and heard the tramping on the porch floor after the shooting. The ruling of the trial court in refusing to grant a new trial because the verdict was against the weight of the evidence cannot be disturbed.

Objections are made to instructions numbered 4, 6 and 12 given at the instance of the People. The objections are that, first, they ignored the circumstances of the alleged assault; second, that they did not recite all the facts from which a legal conclusion would necessarily follow; and third, that under the indictment the defendant might have been found guilty of an assault with intent to do bodily injury or a simple assault, and the jury were not left free to find the defendant guilty of a lesser offense. Instructions 4 and 6 merely stated, in general terms, the rules of law concerning reasonable doubt which have been declared in criminal cases generally, and as neither contained any hypothesis of fact there was no partial statement of fact and no omission of a particular fact. Instruction 12 did contain a hypothesis of fact, and with a change of name was the same as instruction No. 6 given in *Conn* v. *People,* 116 Ill. 458, which, the court said, stated the law with sub-

stantial correctness. The rule declared was the same as was stated by the court in *Crosby* v. *People,* 137 Ill. 325, and *Crowell* v. *People,* 190 id. 508. The instruction recited all the facts from which the legal conclusion of guilt would necessarily follow. The third objection, that the jury were not left free to find the defendant guilty of a lesser offense than the one charged in the indictment, is answered by the fact that the court gave to the jury forms of verdicts if they should find the defendant guilty of assault with intent to murder and also if they should find him guilty of assault with a deadly weapon with intent to do a bodily injury. If the defendant desired any further instruction that the jury might find him guilty of simple assault he should have requested it and in the absence of a request cannot complain. *Dunn* v. *People,* 109 Ill. 635.

Instruction 10 is objected to as ignoring the circumstances of the assault and the question whether the shooting was without provocation or necessity or upon a sudden heat of passion. The defendant and his witnesses testified that there was no shooting done at all, and according to their testimony there was no question of self-defense, provocation or sudden heat of passion causing the shooting. The instruction, however, was correct in stating the rule of the Criminal Code respecting express or implied malice. Deliberate intention is necessary to constitute express malice, but the law implies malice where no considerable provocation appears or where all the circumstances of the killing show an abandoned and malignant heart, and the instruction presented the law on that subject to the jury. The eleventh instruction also correctly stated the law that intention may be inferred from the facts and circumstances shown by the evidence, and if the shooting was done and was deliberately done and likely to be attended with dangerous consequences, the malice or intention requisite to make out the charge of the indictment would be presumed.

Error is assigned on the refusal of the court to give instructions numbered 35, 36 and 37 offered by the defendant. The abstract of the record contains none of the instructions in the case except those we have mentioned, so that it affords no opportunity to judge whether the refused instructions were mere repetitions of legal propositions given in other instructions, if they correctly stated rules of law. They were not correct, however, since instruction 35 directed the jury to find the defendant not guilty of the charge preferred against him in the indictment although he fired the shots in question at the prosecuting witness, if they were fired without deliberation, ignoring the malice implied by law from want of provocation or circumstances showing an abandoned and malignant heart. The defendant testified that he never fired any shots at all, and the instruction presented a hypothesis of fact directly contrary to his own testimony. Instruction 36 directed the jury to find the defendant not guilty of an assault with intent to kill and murder the prosecuting witness although he fired the shots at him, if he did not intend to kill and murder him. This was also inconsistent with the defendant's testimony that he had no revolver and did no shooting, and, of course, the jury would not act upon any theory that the defendant's testimony was willfully false and that he repeatedly shot at his father with a revolver without any intention to kill him. Instruction 37 related to the testimony of the defendant and the duty of the jury to fairly and impartially consider it, but it was evidently not written as intended, inasmuch as it stated that if the jury were not satisfied that the defendant was not guilty they should acquit him. Such an instruction would not have benefited him.

There is no error of law in the record, and the judgment is affirmed.                         *Judgment affirmed.*