## STATE vs. JOHN WOLF.

*Criminal Law—Larceny—Real Property; Severance of—Former Rule Modified—Disregarding Former Ruling of the Court —Judicial Policy—Circumstantial Evidence— Reasonable Doubt.*

1. There need not be first an act of severance of property from its connection with the realty, and after that an actual separate and distinct act of taking and carrying away, to constitute a severance and larceny, but the act of taking and holding and carrying away, at and from the instant of separating it from its connection with the realty—that is, the one continuous transaction of detaching it, retaining possession of it and carrying it away, with intent to commit larceny,—amounts to a severance in

law, although the severance and the taking and carrying away are one continuous transaction. The Ruling in the case of *State vs. Hall,* 5 *Harr.,* 492, departed from.

2. The rule in respect to circumstantial evidence stated.

*(May 22, 1907.)*

LORE, C. J., and GRUBB and PENNEWILL, J. J., sitting.

*Daniel O. Hastings,*Deputy Attorney-General, for the State·

*William G. Jones* for the defendant.

Court of General Sessions, New Castle County, May Term, 1907.

INDICTMENT FOR LARCENY.

At the trial the State proved that on the morning of the 30th day of April, 1907, when George F. Betts, trading as George F. Betts and Company and doing business as a leather manufacturer on the northwest corner of Conrad and Adams Streets in the City of Wilmington, went to his place of business, he missed certain brass parts from the machinery in his plant, among them being a pump dome, several valves ànd two lubricators, all brass, and which when he last saw the same, on April the 27th, were attached to certain parts of the machinery; that said articles were owned by him as well as the factory in which the same were located. That the said pieces of brass were movable parts of the machinery and could be taken therefrom without injuring the factory or the other machinery. The State further proved that the value of the brass so taken from the said machinery was $200. There was further testimony that about four or five o'clock on the afternoon of April 29th, the defendant Wolf sold certain brass articles, including a pump dome to a junk dealer on West Street in said City which were subsequently taken from the latter by a police officer to the City Hall, where they were identified on May 1st by Mr. Betts as being the articles missed from his plant on the thirtieth day of April.

When the State rested, Jones for defendant moved that the

Court instruct the jury to render a verdict of not guilty, on the ground that the evidence on the part of the State showed that the property alleged to have been stolen was real property and not personal property, and therefore could not be the subject of larceny.

The Court refused the motion for binding instructions and directed the defendants' counsel to proceed with the defense. It was later proved that all of the articles in question alleged to have been taken from the machinery were at the time covered by a chattel mortgage executed by George F. Betts, the prosecuting witness, to one Richard Young.

GRUBB, J., charging the jury,

Gentlemen of the jury:—John Wolf, the prisoner at the bar, stands charged in the indictment with the larceny of a certain piece of machinery commonly called a pump dome, of the value of twenty dollars lawful money of the United States of America; and fifty pounds of brass, each pound thereof of the value of twelve cents like lawful money as aforesaid, of the goods and chattels of George F. Betts, trading as George F. Betts and Company.

As very nice technical questions have been raised by the counsel in this case, we will define to you what larceny is in law. Larceny is the wrongful or fraudulent taking and carrying away of the personal goods or property of another with the felonious intent to convert it to his own use and make it his own property without the consent of the owner.

The burden is upon the State--the prosecution--to prove to you by competent and satisfactory evidence every essential ingredient of the offense--the larceny--charged in the indictment. First, in this case—as the prominent point in the case—the State must prove that the property alleged to have been taken in this instance was personal property and not real property. If the State has established that, it must then show that such personal property was, *first*, taken by the accused, and *second*, that it was carried away by the accused, and *third*, that it was so taken and carried away with intent to steal it.

The main defense in this case, as the Court understands it, is that these articles alleged to have been taken—that is, this pump dome and the brass—were real property and not personal property.

We say to you if they were real property when taken and carried away with intent to steal them, then they would not be the subject of larceny,and the prisoner could not be convicted for taking them.    If, however, within the meaning of the law they became personal property and were such at the time of the alleged taking and carrying of them away with the said felonious intent, then the prisoner may be found guilty under this indictment, if upon the facts in evidence in this case you are satisfied in so finding.

So that the question for you and the Court now to consider is, whether this property was real property or not.    Real property is land and, generally, whatever is erected or growing upon or affixed to land.    There are many articles known as fixtures which, though originally wholly moveable and personal in their nature, have acquired, by having been affixed to real estate or applied to use in connection with it, the character of realty.

With that general definition of what real property is, you will consider the facts in this case; of this being—if you find it to to be proven by the evidence—an establishment for the manufacture of leather and that it had within it the machinery for that purpose, including boiler, engine, pump, pipes and various other things essential for its operation as a factory for the manufacture of leather.    Now, then, suppose you find from the evidence that these articles were so connected with the machinery and with that factory and the real estate or land upon which it was situated that it was real estate within the meaning of  the law and  that these articles were so affixed to the property as to be a part of the real estate, consisting of the factory, etc.:    It is contended by the State that although you should find that it was real estate at the time of the commission of the alleged larceny, that still it was then so severed from the real estate as to have become personal property, and, being personal property, the subject of larceny.

Now if you should find, under the law and the facts in this case, that it was severed from the realty and did become personal property at the time of the commission of the larceny, and also find the other essential ingredients of the offense from the facts before you, then you might find the defendant guilty of the larceny charged.    So it is necessary for us to explain to you what, in law, may constitute such a severance of any part of the realty as to make it personalty and subject to larceny.

The state contends that if the prisoner did take those articles and did carry them away, as alleged in the indictment, with intent to steal them, that the mere act of taking those articles from their connection with the machinery became a severance in law from the realty, making them thereupon personalty at the instant of the detaching of them, and that they then and there became the subject of larceny.

In passing upon that contention of the State we will state to you the general tenor and progress of the law upon the subject of severance.

The property must be personal, and there can be no larceny of things fixed to the soil; but as the taking and carrying away would necessarily terminate the character of the property as realty even if it were such, it has been held that the important point of this distinction is that if the severance from the realty of anything which is a part thereof, or annexed thereto so as to go with the realty by descent, or in case of a conveyance, is made by the wrong-doer himself, so that the taking and carrying away is a continuous act, the offense is not larceny, because the taking and carrying away is not of the personal property of another, that which was severed not having been in his possession as a chattel, but only as a portion of the realty.    But some courts have expressed their disapproval of a doctrine so technical even while compelled to follow it; and in many cases of constructive annexation other courts have held the taking and carrying away to be larceny, such as of window sashes not permanently annexed to the building, chandeliers, doors taken from their hinges, rails in a

fence, belts belonging to a mill, valves in a portable pump, or keys of a door, etc.,

It often has been ruled that if once severed by the owner a third person, or the thief himself, as a separate transaction, that part of the realty becomes the subject of larceny. The said objectionable early technical ruling has been modified from time to time in England, so as to afford protection to things fixed to the freehold. The rule was never satisfactory, and the courts in modern times have been inclined to confine it within the narrowest limits.

The question now before this Court has heretofore been raised in this State many years ago in the case of *State vs. William Hall* (5 *Harr.* 492), who was indicted for stealing four copper pipes, the property of Duncan and Wollaston. It appeared from the evidence that these pipes were part of a steam engine, which was attached to a manufacturing establishment in Wilmington It was contended, on behalf of the prisoner, that these pipes could not be the subject of larceny, being joined to the freehold and a part of it; and therefore the detaching and taking them away, if done at the same time, amounted only to a trespass.

In that case the Court charged the jury that the question whether this was or was not a larceny, depended on whether or not the severing and carrying away were one continuous transaction and said:—"Larceny is the felonious stealing, taking and carrying away the personal goods of another. If these pipes were not, when carried off, the personal goods of Duncan and Wollaston, they could not be stolen. As a part of the realty, they were not under the protection of the criminal law so as to make the taking of them a felony. It was but a trespass. Whilst a part of the engine, which was itself a part of the building, they were a part of the building; and, if thus taken and carried away, by one act of severance and separation, it did not come within the difinition of larceny, not being a stealing and carrying away of personal property. But if they were severed by the defendant, or by another, at one time, so that they became personal property, and after they assumed this new character, were

taken and carried away by him with a felonous intent, itwas a case of larceny, and the prisoner ought to be convicted."

In that case the Court held that the act of taking and carrying away the property from its connection with the realty, at one and the same time, with intent to steal it, did not amount in law to such a severance as to change it from realty to personalty and make such continuous transaction larceny. The Court in that case therefore seems to have held that there must be first the act of taking it from its connection with the realty, and after the act of taking it from its connection with the realty there must be a subsequent actual, separate act of taking and carrying it away, in order to constitute the offense of larceny.

In view of the tendency of the more modern authorities since the date of this decision in *Harrington's Reports* in this State, this Court have unanimously arrived at the conclusion that we ought to depart from that very technical and unsatisfactory ruling of the earlier law which was followed by the Court in this *Harrington* case; and that we should hold that there need not be first an act of severance and after that an actual, separate and distinct act of taking and carrying away, to constitute a severance and larceny, but that the act of taking and holding and carrying away, at and from the instant of separating it from its connection with the realty--that is, the one continuous transaction of detaching it from its connection with the realty, retaining possesion of it and carrying it away, with intent to commit larceny, amounts to a severance or larceny in law although the severance and the taking and the carrying away are one continuous transaction. When done by the accused with intent to steal it the detaching of the article from its connection with the realty is a severance which thereupon makes it personalty and the subject of larceny; the continuing to hold it thereafter, for even the briefest period of time, is in sound legal contemplation and construction, a taking, and the removing it from the place of such taking is a carrying away and such severance, taking and carrying away, with intent to steal it, if shown by the evidence, will amount to larceny.

So that we say to you, although you may not be satisfied from the evidence that the prisoner took these articles off the machinery of the factory and from their connection with it as real estate and laid them down, or otherwise ceased to hold them, and then afterwards, by a separate, independent act, took them into his possession again and carried them away, for the purpose of larceny,--but are satisfied that the severance and the taking and carrying them away were one continuous transaction with intent to steal the articles, then you may, if the evidence warrants, find it to be a severance and a taking and carrying away so as to constitute those ingredients of the offense of larceny.

We have arrived at the conclusion to depart from the ruling in 5 *Harrington*, because we consider that it is sound judicial policy to do so and is necessary for the protection of the public.

We always are loath when a question has been raised and argued heretofore before this Court and delibertly considered and decided, especially by a unanimous Court, to overrule a prior decission of the Court; preferring to leave that to the Supreme Court of the State, the Court of highest resort, to determine finally what the law shall be if either party desires to have it passed upon by the Court above and finally settled. But in these criminal cases, while the defendant may take a writ of error, the State cannot under our new Constitution. Therefore if we should decide against the State the question could not be taken up and passed upon. But if we disregard this prior decision and in doing so decide against the prisoner, he can take it up and have it passed upon by the Court, above, and then have the opinion of the Court of years ago and the opinion of the Court at present, passed upon by the tribunal provided by the Constitution for that purpose and settled definitely, and also in accordance with the modern trend of authority, if the Supreme Court deem it lawful and proper to do so.

Now, gentlemen, as we stated to some of you recently in another case, the guilt of the accused person may be proved by direct evidence, that is by someone who was present in case of larceny, for instance, and saw the prisoner take the property and carry it

away with intent to steal it.  But all crimes can not be proven by those who see the offense committed, because a crafty, skillful criminal will select some time to do the stealing when nobody is present to see him and give direct evidence.   Therefore, in the interese of the adminstration of justice, it has been necessary to prove guilt by circumstantial evidence, as we call it; that is, by proving those circumstances from which a fair-minded and intelligent jury may reasonably infer the guilt of the accused person.

In this case the State contends that it has shown to you that these articles were found in the possession of the accused.   The law is that where stolen property is found in the possession of another, recently after the larceny of it, the party in possession of it is presumed to be guilty, unless his possession is satisfactorily explained or his innocence is otherwise satisfactorily shown by the evidence before the jury.

We will simply add that every prisoner is presumed to be innocent until he is proven guilty beyond a reasonable doubt.

But a reasonable doubt is not a trivial,  fanciful, speculative doubt, or a mere possible doubt, but is such a substantial  doubt as intelligent, fair-minded jurors may reasonably entertain after a careful consideration of all the relevant evidence in the case.

Verdict, guilty with a recommendation to  the mercy of the Court.