STRIBLING *v.* STATE.

Opinion delivered May 24, 1926.

1.  HOMICIDE—SUFFICIENCY OF EVIDENCE.—In a proscution for murder, evidence *held* sufficient to sustain finding that accused shot deceased, who died immediately from effect thereof.

2.  CRIMINAL LAW—PROOF OF VENUE.—The venue in criminal cases may be proved by a preponderance of the evidence, and may be established by circumstantial evidence.

3.  CRIMINAL LAW—JUDICIAL NOTICE.—Courts and juries take cognizance of location of towns, postoffices and navigable streams.

4.  CRIMINAL LAW—EVIDENCE.—In a prosecution for murder, where witnesses testified that accused previously attempted to assault deceased, testimony of a witness that, as accused was leaving the scene of such attempt, witness asked him what he was doing there with a gun, and accused raised the gun and ordered him to stop, was admissible as part of the story and as showing accused's state of mind toward deceased.

5.  CRIMINAL LAW—ADMISSION OF EVIDENCE IN REBUTTAL.—The admission of testimony in rebuttal is within the court's discretion.

Appeal from Crittenden Circuit Court, Second Division; *G. E. Keck,* Judge; affirmed.

*Walter S. Duggar* and *R. R. Bond,* for appellant.

*H. W. Applegate,* Attorney General, and *John L. Carter,* Assistant, for appellee.

McCulloch, C. J. Appellant was indicted by the grand jury of Crittenden County for murder in the first degree in the killing of Brady Williams, and on the trial of the cause he was convicted of that offense, and sentenced to death. The principal ground urged here for reversal of the judgment is that the evidence is not sufficient to sustain the verdict.

The killing occurred on October 2, 1925, about eight o'clock in the morning, at or near West Memphis, in Crittenden County. Appellant and Brady Williams both resided at West Memphis, and Williams was working on the bridge, or viaduct, commonly known as the Harrahan viaduct, which forms the approach to one of the bridges across the Mississippi River at Memphis.

Witnesses introduced by the State testified that, on the day before the killing, appellant came to the place

where the workmen, including Williams, were sitting about, eating their noonday meal, that he had a shotgun in his hand, and attempted to assault Williams, declaring, as he approached, that he had come to kill Williams on account of the latter having ravished his (appellant's) daughter. There was testimony introduced by appellant to the effect that, in the latter part of July, deceased had ravished appellant's fifteen-year-old daughter. According to the testimony of the witnesses for the State, appellant's assault on Williams was averted by Williams getting behind other men who were present at the time. One of the witnesses testified that, when appellant made the assault with the gun, he (witness) ran over a short distance and notified a man named Jaco, who was the "boss man," as they called him, and that, as Jaco came forward, appellant turned and walked away, and that, when Jaco accosted him and reprimanded him for interfering with the workmen, appellant raised his gun and compelled Jaco to stop. This ended the occurrence, according to the testimony of the witnesses. The killing occurred early next morning, and the same witnesses, or some of them, testified that they saw appellant in the edge of a thicket, armed with a gun, and that, as Williams entered the thicket to hide himself for the purpose of attending to a call of nature, they heard the sound of a gunshot in that direction; and, looking there, they saw appellant running away with a gun in his hand, and Williams coming back toward the viaduct, calling out in anguish. They testified that Williams made no statement, but ran a short distance and fell dead.

There is some discrepancy in the testimony as to the kind of gun appellant used and also as to the kind of clothing he wore, but three witnesses testified that they saw appellant shoot Williams, or at least they saw him run away when the shot was fired. If the testimony of the witnesses is true, appellant is undoubtedly the man who shot and killed Williams. He denied it, and said that he had no gun and was not there on that occasion. Other witnesses introduced by him supported

his testimony, but that raised a question for the jury, and we are concluded by the verdict of the jury rendered upon conflicting testimony.

It is argued that the testimony does not sufficiently show that deceased died from the effects of the wound, but we think the testimony is abundant to show that Williams was shot, and died immediately from the effect of the wound, and that appellant was the one who did the shooting.

Again, it is contended that the venue is not proved. We have often held that venue in a criminal case may be proved only by a preponderance of the evidence, and may be established by proof of circumstances. The witnesses testified that the killing occurred in sight of the viaduct in West Memphis, and in front of the postoffice. Courts and juries take cognizance of the locations of towns, postoffices and navigable streams, and we know that the places described by the witnesses are situated in Crittenden County.

The State was permitted, over the objection of appellant, to introduce, in rebuttal, Jaco, the individual mentioned above, who testified in substance that, on the day before the killing, about noon, he was called by one of the men to come down to the place near the viaduct where appellant was, armed with a gun, and that, when he came within about one hundred yards of appellant and asked him what he was doing there on the premises with a gun, appellant raised the gun and directed him to stop, which he did. It is contended that this testimony was incompetent, as it tended to prove a distinct offense, that is to say, an assault by appellant on Jaco. The court directed the jury, at the time the testimony was introduced, not to consider it for any purpose except "as it might shed light on the mental condition of defendant with reference to his attitude or feeling towards the deceased." We think the testimony was competent. Jaco was not present when appellant attempted to assault Williams, but other witnesses testified concerning appellant's conduct in that respect, and Jaco's testimony

related to appellant's conduct immediately afterwards, and his testimony tended to show appellant's disposition to prevent any interference with his effort to assault Williams. It is true the attempt was over, and appellant was about to leave the premises, but the tendency of this testimony was to show his state of mind at that time, not towards Jaco but towards Williams. In other words, it was part and parcel of the whole story as to what occurred on this occasion when appellant attempted to assault Williams, and the part related by Jaco was concerning appellant's conduct immediately after the assault. Of course, if there had been no other testimony introduced concerning what occurred on that occasion, Jaco's testimony would not have been competent, as it would have had reference only to appellant's apparent attitude towards Jaco, but, when the testimony is considered in connection with what the other witnesses related, it is plain that the conduct of appellant at that time had some tendency to show his state of mind towards the deceased Williams. This testimony was introduced in rebuttal, but that was a matter which appealed to the discretion of the trial court.

We find no error in the record, and the testimony abundantly justifies the verdict of the jury in finding appellant guilty of murder in the first degree.

Judgment affirmed.