STATE v. SULLIVAN.

No. 4780.   Decided March 7, 1929.   (276 P. 166.)

*Ray S. McCarty* and *Vere L. McCarthy,* both of Salt Lake City, for appellant.

*George P. Parker,* Atty. Gen., and *L. A. Miner* and *Byron D. Anderson,* Asst. Attys. Gen., for the State.

ELIAS HANSEN, J.

The defendant was convicted of the crime of robbery and sentenced to serve an indeterminate term in the state prison. He appeals. He seeks a reversal of the judgment

rendered against him because of alleged errors (1) in the admission of evidence over his objections; (2) in the rejection of evidence; (3) in the instructions given the jury; and (4) in refusing to give defendant's requested instructions to the jury.

About midnight of October 15, 1927, the defendant, Jack Boyd, H. Kelley, and J. R. Neil went to a room in the Newhouse Hotel in Salt Lake City, Utah. Neil testified that soon after they entered the room Boyd and the defendant went out of the room and returned with a deck of cards, and suggested that they play cards for the drinks; that Neil responded, "I don't think I play in here;" that thereupon Boyd struck Neil in the eye with his fist, rendering Neil unconscious for a few minutes; that when Neil regained consciousness they all went to the elevator; that on the way to the elevator Boyd said to Neil, "If you call I will kill you;" that they all went down on the elevator, and thence out onto the street, where the defendant, Boyd, and Kelley left Neil; that when they went into the room in the Newhouse Hotel Neil had $710 in money, but when he came out he had only $20.

E. R. Applegreen testified that he was a patrolman in the Salt Lake City police department; that he saw Neil about 1:20 on the night of the alleged robbery; that at that time Neil appeared to be in a dazed condition; that Neil's face was bruised and swollen and he had a scalp wound. Applegreen further testified that the defendant was arrested at about 2:30 a. m. on the morning after the alleged robbery; that, when arrested, defendant stated that Neil got into an argument and started to fight at the Newhouse Hotel, and that in order to keep Neil quiet he (Sullivan) hit him; that defendant further said he was afraid the other fellows would kill Neil, so he took Neil to the elevator. Applegreen further testified that, when he informed defendant that Neil claimed that he lost $700, the defendant responded that he had seen a little money, but did not think that Neil had lost $700.

J. C. Collins testified that he was a police officer and a private detective; that he saw Neil at about 1:35 on the morning after the alleged robbery; that at that time Neil had a cut on his left eye and wound on top of his head; that Neil was in a dazed condition, and his clothes were bloody. Collins further testified that he arrested the defendant at about 2:10 on the morning following the alleged robbery; that the arrest was made upon information furnished by Neil; that after the defendant was arrested he said that he did not "roll" Neil; that Neil did not lose $700, or $800, or $900; that defendant said, "Listen, officer; it was a 3-way duke; all I got was $40, and the other two persons got $40; I'll give you the money back right now;" that defendant had only $10 on his person when he was arrested.

The defendant testified in his own behalf. According to his testimony, he, Boyd, Kelley, and Neil went to the Newhouse Hotel and played poker. After they had played a short time, defendant went into the bathroom. When he went into the bathroom, Neil and Boyd were the only ones playing. There was about $70 or $75 lying on the table in the pot. Defendant further testified: "When I came out of the bathroom, Boyd pulled additional money out of his pocket, and said, 'I will bet some more,' and Neil said, 'I have no more money,' so that it was a showdown, and Boyd turned over his hand, and he had a ten in the hole, which made two tens, and Neil turned over his hand, and he had two aces and two sixes, and Neil tipped the top card and it was a ten, and he saw it was a ten, and he took the ten and gave Boyd the second card, which was a jack, and then Boyd said, 'The ten is mine,' and Neil said, 'No; it is not; it is mine;' then Boyd took the ten and gave Neil the jack, which was Boyd's right card, and Neil says it was his, and he jumped up and hit him, and Boyd hit him twice, once in the face, and I grabbed Boyd and said, 'We can't have no fight in here, because we will all get arrested; we can't raise any rumpus here;' and we all went down and got on the elevator." The defendant further testified that,

when they got off the elevator, Neil walked over towards the desk, but the defendant and Kelley went and got him. They all then went out onto the street, where Neil left the other three. The defendant also testified that he did not receive any of Neil's money, and that he did not tell Collins that he received any of Neil's money. The defendant also produced five witnesses, who testified that Neil was a gambler, and that his reputation for truth and veracity in the community in which he resided was bad.

E. R. Applegreen, one of the state's witnesses, was asked the following questions on his direct examination, and gave the following answers, over timely objections and exceptions by counsel for defendant:

"Q. Had you been apprised that something had happened (referring to the time when Applegreen saw Neil at the Newhouse hotel)? A. Yes, sir.

"Q. Did you have a conversation with Mr. Neil when you saw him in the Newhouse hotel? A. Mr. Neil said he would identify the parties; that he knew them, if he could come across them on the street."

The admission of the foregoing answers in evidence is assigned as error. The evidence was admitted, as stated by the trial court, upon the theory that it was a part of the res gestae. We are of the opinion that the ▮ testimony objected to does not come within the rule of res gestae. The testimony is in no sense a part of the transaction under investigation, and it does not tend to characterize or explain what occurred in the room at the Newhouse Hotel at the time of the alleged robbery. It is, however, difficult to see how the testimony objected to was prejudicial to the defendant. That Neil was able to identify the persons who were in the hotel with him at the time of the alleged robbery is established beyond dispute. The defendant so testified. The statement that something had happened before Applegreen saw Neil at the hotel is so vague and uncertain as to be meaningless, and hence cannot be said to be prejudicial.

During the course of the cross-examination of Applegreen, counsel for defendant asked a number of questions about what Applegreen and Collins did just before going down to the Newhouse Hotel. One of the questions was, "Didn't you stop at a parked automobile?" Applegreen's answer was, "No, sir; we were in Collins' automobile, and at that time, when Collins came back, he said he had seen two fellows go into the Newhouse Hotel, and one had a gun in his pocket when he went in." Defendant's counsel asked "that that be stricken." The motion was denied. The ruling is assigned as error. Part of the answer was not responsive to the question, and that part might well have been stricken. Part of the answer was responsive. If counsel for defendant wished to have stricken the part of the answer that was not responsive to his question, he should have confined his motion to the objectionable part of the answer. Moreover, the answer cannot be said to be prejudicial to the defendant. There is nothing in the answer conveying the idea that the defendant went into the Newhouse Hotel with a gun in his pocket. There is no evidence, and no claim is made, that the defendant had a gun on the night in question.

Thomas R. Golightly was called as a witness by the state, and testified concerning the arrest of the defendant, and also concerning Neil's physical condition soon after the alleged robbery. On direct examination he was not asked about any conversation with Neil. On cross-examination he was asked: "Did Mr. Neil say to you that he had been playing cards?" The state objected to the question, upon the ground that it was not proper cross-examination. The objection was sustained. The court's ruling in such respect is assigned as error. We are of the opinion that the court's ruling was right. Moreover, Golightly was called as a witness for the defendant, and testified at length as to what Neil told him on the night of the alleged robbery. He testified that Neil said that they had been playing cards. Thus the testimony that the defendant

attempted to get before the jury on cross-examination of Golightly was admitted in evidence when Golightly was called and testified as a witness for the defendant.

Mary L. Neil, wife of J. R. Neil, was called as a witness by the state. On her direct examination she testified that she and her husband had resided at Tulsa, Wyo.; that they had conducted a restaurant and confection-  ■ ery; that they came to Salt Lake about September 23 or 24, 1927; that they registered at a hotel the first night, and then went to Heath's automobile camp at Salt Lake City; that they intended to purchase or lease a rooming house in Salt Lake City; that her husband had considerable money on his person the morning of October 15, 1927. On cross-examination, counsel for defendant asked Mrs. Neil these questions: "Now, Mrs. Neil, Mr. Neil in Butte spent a great deal of time in the pool hall?" "You know he has worked in pool halls as what is commonly called a booster or a schill man?" The prosecuting attorney objected to the questions, upon the ground that the same were not proper cross-examination. The objections were sustained. Mrs. Neil was further asked on cross-examination: "Did you tell Mrs. Agnes Thompson, during the month of January, this year, that your husband, John Neil was a liar and could not be believed under oath?" Counsel for the state objected to that question upon the ground that it was incompetent, irrelevant, and immaterial. The objection was sustained. Nevertheless Mrs. Neil answered, "I never told that." These rulings are also assigned as error. The assignments are not argued by counsel for defendant. There is no just cause of complaint because of these rulings.

The court gave, as one of its instructions to the jury, the following:

"Section 8043 of the Compiled Laws of Utah of 1917 defines the crime of robbery as follows: 'Robbery is the felonious taking of personal property in the possession of another, from his person or immediate presence, and against his will, accomplished by means of force or fear.' "

Defendant excepted "to the giving of the foregoing instruction and the whole thereof, on the ground that the included offenses of grand larceny and petit parcency are not given to the jury." No complaint is made ■■ that the instruction objected to does not properly define the crime of robbery. The fact that the instruction excepted to does not also define grand and petit larceny cannot be said to render a proper definition of robbery improper. It is, however, urged upon this appeal that it was the duty of the trial court to instruct the jury that the crimes of petit larceny and grand larceny were included within the charge made against the defendant. It is clear that the crimes of grand larceny and petit larceny are included within the language of the information filed against the defendant. It may also be conceded that under the evidence the jury might well have been justified, under proper instructions, in finding the defendant guilty of petit or of grand larceny, instead of the graver crime of robbery. The defendant, however, did not request any instruction that the crimes of grand larceny and petit larceny were included within the charge made against the defendant. Neither was any request made to the trial court to include within its instructions to the jury a definition of petit larceny or of grand larceny. The only reference in the record before us to the crimes of petit larceny and grand larceny is that contained in the objection to the instruction defining robbery.

On the contrary, the defendant requested the trial court to charge the jury that "to find the defendant guilty of robbery you must believe beyond a reasonable doubt that the defendant either actually robbed the complaining witness, or that he aided or abetted and encouraged in the robbery, if there was a robbery; otherwise you must find the defendant not guilty." The requested instruction was given. It thus appears that the defense proceeded upon the theory that the defendant was entitled to an acquittal, unless the jury should find from the evidence beyond a reasonable doubt that the defendant was guilty of robbery. Defen-

dant's requested instruction precluded the jury from finding the defendant guilty of either petit larceny or grand larceny. When the trial court, at defendant's request, gave an instruction which precluded the jury from considering the defendant's guilt or innocence of the crimes of petit and grand larceny, defendant cannot be heard to complain upon appeal, because the court did not instruct as to the law of such offenses.

Moreover, the great weight of authority is that, before a defendant can be heard to complain because the trial court did not instruct upon the law of lesser offenses included within the crime charged, such defendant must have requested instruction upon the included offense or offenses. *Hamilton* v. *State*, 62 Ark. 543, 36 S. W. 1054; *People* v. *Barney*, 114 Cal. 554, 47 P. 41; *Miller* v. *People*, 23 Colo. 95, 46 P. 111; *Lindsey* v. *State*, 53 Fla. 56, 43 So. 87; *Copeland* v. *State*, 41 Fla. 320, 26 So. 319; *State* v. *White*, 7 Idaho 150, 61 P. 517; *People* v. *Biles*, 2 Idaho 114, 6 P. 120; *People* v. *Rozanski*, 268 Ill. 607, 109 N. E. 711; *Reynolds* v. *State*, 147 Ind. 3, 46 N. E. 31; *McClay* v. *State*, 75 Ind. 260; *State* v. *Newton*, 74 Kan. 561, 87 P. 757; *State* v. *Stout*, 114 Kan. 585, 220 P. 180; *Curtis* v. *State*, 97 Neb. 397, 150 N. W. 264; *State* v. *Murbach*, 55 N. D. 846, 215 N. W. 552; *McIntyre* v. *State* (Neb.) 218 N. W. 401; *Krause* v. *State*, 88 Neb. 473, 129 N. W. 1020, Ann. Cas. 1912B, 736; *McConnell* v. *State*, 77 Neb. 773, 110 N. W. 666; *Barr* v. *State*, 45 Neb. 458, 63 N. W. 856; *People* v. *Jordan*, 125 App. Div. 522, 109 N. Y. S. 840; *State* v. *McCoy*, 88 Ohio St. 447, 103 N. E. 136; *State* v. *Reyner*, 50 Or. 224, 91 P. 301; *State* v. *Sutterfield*, 22 S. D. 584, 119 N. W. 548; *State* v. *Horn*, 21 S. D. 237, 111 N. W. 552; *State* v. *Hanlon*, 62 Vt. 334, 19 A. 773; *State* v. *Parsons*, 44 Wash. 299, 87 P. 349, 7 L. R. A. (N. S.) 566, 120 Am. St. Rep. 1003, 12 Ann. Cas. 61; *Weisenbach* v. *State*, 138 Wis. 152, 119 N. W. 843; *Cupps* v. *State*, 120 Wis. 504, 97 N. W. 210, 98 N. W. 546, 102 Am. St. Rep. 996; *State* v. *O'Connor*, 119 La. 464, 44 So. 265.

Similar views have been expressed by this court. *People* v. *Robinson,* 6 Utah 101, 21 P. 403; *State* v. *McCurtain,* 52 Utah 63, 172 P. 481. In the case of *People* v. *Robinson* a distinction is made between a case where there are different degrees of the offense charged and a case where there may be a lesser offense included within the crime charged. The basis for the distinction is applicable to the present state of the law in this jurisdiction. Comp. Laws Utah 1917, §§ 9024, 9025.

In Kansas it has been held that the evidence may point so plainly to the necessity for an instruction on a lesser degree or offense than the crime charged that the omission to instruct on such lesser degree or included offense will constitute prejudicial error, even though no request has been made for such instruction. *State* v. *Winters,* 81 Kan. 421, 105 P. 516.

It has also been held that, whenever any reasonable construction of the evidence is such as to justify the jury in finding the defendant guilty of a lesser offense, or a degree lower than that charged, it is prejudicial error for the court to fail to instruct on the lower degree or offense, even though no request has been made. *State* v. *Cody,* 18 Or. 506, 23 P. 891, 24 P. 895. This case was overruled in the case of *State* v. *Foot You,* 24 Or. 61, 32 P. 1031, 33 P. 537. See *Territory* v. *Nichols,* 3 N. M. 76, 2 P. 78; *Territory* v. *Friday,* 8 N. M. 204, 42 P. 62. Other cases dealing with the duty of the trial court to instruct on different degrees of the crime charged and included offenses will be found collected in a footnote to the text in 16 C. J. § 2451, p. 1023.

In this case the defendant not only failed to request an instruction on the included offenses of petit and grand larceny, but, as already indicated, an instruction inconsistent with the contention now urged by the defendant was requested by him and given by the court. For the court to have instructed the jury on the offenses of petit and grand larceny, after it was instructed to acquit the defendant,

unless he was guilty of robbery, would have been confusing in the extreme.

The court was also requested to instruct the jury to find the defendant not guilty. The request was refused. The refusal of the court to direct a verdict of not guilty is assigned as error, but not argued. The evidence is sufficient to support the verdict.

Other claimed errors are assigned, but not argued. We have examined the other assignments of error, and find they are without merit.

THE JUDGMENT IS AFFIRMED.

CHERRY, C. J., and STRAUP, EPHRAIM HANSON, and FOLLAND, JJ., concur.