Argued at Pendleton May 5; affirmed July 10, 1930

## STATE *v.* MILLER

(289 P. 1063)

*N. G. Wallace* of Bend (Bernard Ramsey of Bend on the brief) for appellant.

*Ross Farnham,* District Attorney of Bend, for the state.

BEAN, J. The defendant was indicted, tried and convicted of the crime of larceny of a gasoline engine and pump jack alleged to be the personal property of Louis M. Marriott and sentenced to be confined in the penitentiary of this state for a period of two years. From this judgment he appealed.

The facts disclosed by the evidence are that some time prior to the date of the alleged larceny, Louis M. Marriott, the prosecutor, owned a certain tract of land upon which there was a deep well and, used in connection with the well and attached thereto, was a pump, a pump jack and pipes leading into the well for several hundred feet, and the power for pumping was furnished from a certain gas engine. This paraphernalia had been on these premises for some fifteen years.

Mr. Marriott, as a witness for the state, testified in part that he lived at Redmond, Oregon, and as follows:

"Q. Do you own any land in Deschutes county, Oregon?

"A. No, not any land; just land that I deeded over to a friend. I am interested in the land.

"Q. Do you have control of any land in Deschutes county?

"A. Only just interested in it.

"Q. Well, are you interested in land in Deschutes county?

"A. Yes.

"Q. Where is that land located?

"A. Ten miles west of Redmond.

"Q. And where is it located with reference to the Redmond-Sisters highway?

"A. A mile from the McKenzie highway.

"Q. Which way?

"A. South.

"Q. A mile south of the McKenzie highway. And what equipment did you have out on that place about the first of last March?

"A. I had an engine and deep well out there.

"Q. And where was that located?

"A. On this ranch."

By an appropriate motion, the defendant challenged the testimony, on the part of the state, as insufficient to show that the crime was committed in Deschutes county, Oregon, and submits that the venue of the offense is a material allegation of the indictment and must be proved. Citing: *State v. Casey,* 108 Or, 403 (213 P. 771; 217 P. 632); *State v. Harvey,* 117 Or. 471 (242 P. 440). Defendant contends it was not shown that Redmond is in Deschutes county or state of Oregon; that the boundaries of the city of Redmond are not fixed by public law of this state.

 The burden of proving the venue as laid, and beyond a reasonable doubt, is upon the state, though where the state omits to prove the venue specifically the jury may infer it from the evidence on both sides. Circumstantial evidence is sufficient to establish venue: Underhill's Crim. Ev., (3d Ed.) section 467.

 The city of Redmond was organized under and by virtue of an initiative charter by vote of the electors thereof. The charter adopted was duly filed with the librarian of the supreme court library.

Oregon Laws, section 3846, makes it the duty of incorporated cities or towns in this state to file with

the librarian of the supreme court library a duly certified copy of the charter and amendments thereto of the incorporated cities or towns adopted through initiative process by the legal voters of such city or town, and declares that when so filed all the courts of the state shall take judicial notice thereof and the same may be referred to and pleaded as a public statute of the state.

An examination of the charter of Redmond discloses that the city of Redmond is located in section 16, township 15 south, range 13 east, W. M. The testimony shows that the place where the alleged offense occurred is ten miles west of Redmond. The west line of Deschutes county is about twenty miles west of the city of Redmond, making the ranch mentioned in Deschutes county, Oregon. Moreover, the ranch referred to is mentioned as in Deschutes county. The point contended for by defendant is not well taken. There was no error in this regard.

By an assignment the defendant predicates error upon the holding of the trial court that the testimony in regard to the ownership of the personal property alleged to have been stolen was proved, as laid in the indictment, in Louis M. Marriott. This assignment raises a very grave question. The trial court was in doubt as to the sufficiency of such testimony. The pump and pump jack attached to the pipe in the well in a well house, or shed, were unquestionably a part of the realty. It did not become personal property until after it was disconnected from the realty. Its asportation and conversion with a felonious intent, after such property was disconnected from the realty by a person, would constitute larceny: *State v. Donahue*, 75 Or. 409 (144 P. 755, 147 P. 548, 5 A. L. R. 1121); II

Wharton Crim. Law (11th Ed.), pp. 1321, 1323, §§ 1099, 1103; II Wharton Crim. Law (11th Ed.), § 1173 reads, in part, thus:

"The property of the stolen goods must be averred to be in the right owner, general or special, if known, or in some person or persons unknown. * * * Or if it appears that the owner of the goods is another and different person from the person named as such in the indictment, the variance will be fatal and the defendant, at common law, must be acquitted. * * *"

■ The allegation of ownership of stolen goods is supported by proof of any legal interest or special property in them, although less than the absolute title: 36 C. J., p. 860, § 404, note (a).

As to the space of time necessary to intervene between the severance and the taking to convert the trespass into larceny, a majority of the cases establish the rule that no particular space is necessary, it being necessary only that the two acts be so separated in time as not to constitute one transaction. In some jurisdictions, however, it is held that the act of severance converts the article into a chattel and no matter how instantaneous its removal may be the taking is theft if done without the consent of the owner and with a larcenous intent. Note to *State v. Klinkenburg,* 49 L. R. A. (N. S.) 965.

■ In the present case, the testimony indicates, in a general way, that the defendant and his helper detached the engine and pump and afterward filled, or attempted to fill up the well, presumably in an attempt to cover up the taking. The evidence does not suggest that the severance and the asportation of the personalty were one continuous act.

In order to change the character of the property by the severance, it was not necessary for the taker to leave the land or go back to Redmond before he took the property away.

A person was held guilty of larceny of machinery in a factory in *State v. Wolf*, 6 Penn. (Del.) 323 (66 Atl. 739), although the severing, or the carrying away, was one continuous transaction. In departing from the ruling in the case of *State v. Hall*, 5 Harr. (Del.) 492, that the severing and the carrying away must be by separate acts in order to constitute larceny, the court said that:

"In view of the tendency of the more modern authorities * * * this court have unanimously arrived at the conclusion that we ought to depart from that very technical and unsatisfactory ruling of the earlier law which was followed by the court in this Harrington case; and that we should hold that there need not be first an act of severance and after that an actual, separate and distinct act of taking and carrying away, to constitute a severance and larceny, but that the act of taking and holding and carrying away, at and from the instant of separating it from its connection with the realty,—that is, the one continuous transaction of detaching it from its connection with the realty, retaining possession of it and carrying it away, with intent to commit larceny, amounts to a severance or larceny in law although the severance and the taking and the carrying away are one continuous transaction."

Note, 49 L. R. A. (N. S.), p. 967.

We are not especially concerned in regard to title to the land.

Mr. Marriott, the alleged owner, testified, in effect, that he had, prior to the date of the alleged larceny, "deeded this land to a friend." He testified, in substance, in regard to the equipment, in answer to the

inquiry, "And what equipment did you have out at that place about the first of last March?", "A. I had an engine and deep well out there, (meaning, we think, that he owned the engine, and describing the kind of engine)." "Q. How long had you had that equipment out there? A. Oh, it has been a number of years, nearly fifteen years, I suppose. Q. And how long since you have had control of it? A. Since 1923." He further testified that he was out to the place in the month of February, "and we had taken the hands in that had stayed there all winter"; that he had a crew out there at the place during the winter; that the gasoline engine and pump were there at that time; that he next visited the place, after bringing the hands in, in February, the fore part of April; and did not find the engine and pump jack there at that time; that he had not sold or disposed of them. "That he found the engine and pump gone and the well partly filled up, or looked like they had tried to fill it up."

■ We think the word "control," as here used, meant "possession." We can not say that it indicated anything else. One of the definitions of "possession" found in Webster's New International Dictionary is: "2. Specif. Law. Act, fact or condition of a person's having such control of property that he may legally enjoy it to the exclusion of all others having no better right than himself. * * *"

■ The words that "I had an engine" were intended to convey the idea that he owned such engine. The allegation of ownership of a person named in an indictment is supported by proof that he "was in the actual care, control and management of it": 36 C. J. 865, sec. 417.

Whatever had been done by the holder of the legal title to the land, it is clear that Marriott's possession

thereof and of the equipment mentioned was not in any manner changed or disturbed. Moreover, the defendant recognized Marriott as the owner of the property after he had missed the chattels.

It, therefore, appears that Mr. Marriott had control of, or possession of, the engine and pump for a long time. His ownership and right to the equipment was in no way questioned upon the trial.

■ The testimony is somewhat meager. We should construe it as intended by the witness and as understood by the jury. The exact language used is not so important. Undoubtedly the testimony indicated to the jury that Mr. Marriott, the alleged owner of the personalty, had absolute dominion and control of the property and the taking thereof from him, if with a felonious intent, constituted larceny. We do not commend such method of proof.

Error is predicated upon a claim that the court permitted the witness Marriott, over the objection and exception of the defendant, to testify concerning an attempt on the part of the defendant to settle the matter out of court by putting the pump back in shape. This testimony was introduced without objection and on motion of defendant's counsel it was stricken out and the jury was instructed to disregard it. After that Marriott testified that the defendant brought him up to see his lawyer to see whether or not Marriott had to go ahead with this "trouble," and the defendant made inquiry of the prosecutor as to what was being done before the grand jury.·

■ ■ The defendant did not deny the taking of the property, but claimed a right to do so by virtue of a bill of sale given to his wife, Mrs. Miller. The question of motive and good faith of the defendant in taking the

engine and pump was particularly a matter of importance upon the trial and we think the state was justified in showing the attitude of defendant in the matter. Whether the taking of the chattels was felonious or not was a question for the jury. We see no error in admitting the testimony that was not stricken out. True, the defendant had a right to settle any civil claim to the engine and pump if there was an honest dispute in regard thereto. All of this was for the determination of the jury.

█ In order to sustain an indictment for larceny, the chattels alleged to have been stolen must be proved to be either the absolute or special property of the alleged owner, provided that such owner be not technically the defendant: II Wharton's Crim. Law (2d Ed.), p. 1394, § 1170.

Mr. Underhill, in his work on Criminal Evidence (3d Ed.), § 463, states:

"The ownership of the property must be proved substantially as laid. Slight discrepancies in proving the name of the owner may be disregarded. The best evidence of ownership is the instrument under which the title is claimed, and it should be produced, though under most circumstances, ownership of personal property may be proved by parol. Direct proof of ownership is not always necessary. Ownership may be inferred from circumstances. Possession of personal property is primary evidence of ownership, if it appears that the alleged owner exercised exclusive control, possession and management over it. An absolute ownership need not be proved. Evidence that the alleged owner held the property as bailee, or trustee, will suffice. * * *"

A motion for a directed verdict in favor of defendant was interposed and error is alleged in the refusal thereof. This assignment depends upon the questions

raised by defendant in regard to venue and ownership of the chattels alleged to have been stolen and requires no further mention.

Finding no reversible error in the record, the judgment of the circuit court is affirmed.

McBRIDE, J., not sitting.

ROSSMAN, J., took no part in the consideration of this case.