278 P.2d 618

**STATE of Utah, Plaintiff and Respondent,**

v.

**Charles Lee MITCHELL, Defendant and Appellant.**

No. 8226.

Supreme Court of Utah.

Jan. 13, 1955.

D. H. Oliver, Salt Lake City, for appellant.

E. R. Callister, Atty. Gen., Ken Chamberlain, John W. Horsley, Salt Lake City, for respondent.

HENRIOD, Justice.

Appeal from a second-degree murder conviction. Affirmed, but remanded for

re-sentencing to a term certain instead of to an indeterminate term, which latter sentence in this case was faulty but correctable.[1]

In view of the verdict in this case, the following condensed narrative may be charged against defendant in sustaining his conviction:

Defendant and the deceased had been co-workers in the Blackfoot, Idaho potato fields. Twice, about October, 1952, defendant had pawned and redeemed a .25 calibre pistol. On October 26, after a dice game altercation and immediately after a shot had been fired, defendant was seen to be holding a pistol at the head of a Blackfoot hotel staircase. Next day a .25 calibre cartridge case was found on the stairs and later a .25 calibre slug was recovered from the rug.

On October 27, defendant and the deceased drove to Ogden, Utah, in the latter's car, where they visited and drank with friends and where defendant on a number of occasions displayed a pistol. Defendant announced that he was going to return to Idaho that night with the deceased, who had an undetermined amount of money, described as "quite a wad," and who, some testimony indicated, had become drunk.

Next morning the deceased was found dead on a Cache County side road, with a fractured skull and a .25 calibre slug in his brain. One of the wheels of his car had been driven over his foot, and the car, whose seat was stained with blood of the same type as deceased's was found the same morning abandoned in Blackfoot, and a spent .25 calibre cartridge case was recovered from the floor. The defendant, who was seen in Blackfoot that same morning was seen in Idaho Falls that afternoon, after having left Blackfoot without collecting his back wages and without using a hotel room for which he had paid. Defendant asked a friend in Idaho Falls to procure him a bottle of gin, and the friend testified that he observed a number of cartridges in defendant's hand as the latter reached in his pocket for money, and also said he was aware that defendant had a bus ticket to Butte, Montana. Two days later defendant was apprehended in Bozeman, Montana, headed for Denver, Colorado. Five .25 calibre cartridges were found in his suitcase and human blood was found on his pants and shirt.

The slugs found in the Blackfoot hotel and in the deceased's brain were both .25 calibre and ballistically were shown to have been fired from the same gun. The cartridges found in defendant's suitcase were .25 calibre and were manufactured by the same company that manufactured the other two spent cartridges.

A doctor who had examined the victim's body thought the deceased was killed elsewhere than where found because he ob-

1. See Title 77–35–20, U.C.A.1953; Lee Lim v. Davis, 75 Utah 245, 284 P. 323, 76 A.L.R. 460.

served no blood on the ground, but a number of peace officers who examined not only the body but also the surrounding scene, testified that there was blood under the victim's head and chest.

Defendant urges 1) that the original complaint was void because approved by the District, rather than the County Attorney, 2) that venue was not established and 3) that it was error for the court not to instruct as to lesser included offenses, although the defense made no request therefor.

■■ As to 1): The complaint needed no approval by either the District or County Attorney, since it was presented to a City Judge who was a magistrate other than a justice of the peace,[2] and since a complaint needs the approval of a County Attorney only when presented to a magistrate who is a justice of the peace,[3] to determine if a warrant of arrest should issue.

■■ As to 2): Some jurisdictions require that, in criminal cases, where venue is in issue, it must be proved beyond a reasonable doubt,[4] and others by a preponderance.[5] Some authorities, including this court, permit venue to be established inferentially by circumstantial evidence.[6] We believe and hold that, however it is proved, it must be done by a preponderance of the evidence only and not beyond a reasonable doubt, since venue is not an element of the offense, and there seems to be no reason to require the same quantum and quality of proof to prove venue as is required to prove such elements.

■ It appears to us that venue reasonably and by a preponderance of the evidence, was established to be in Cache County. Among other things, the body was found there, a fact from which an inference might be drawn, absent evidence proving otherwise, that the killing occurred there.[7] Several witnesses attested to the fact that there was fresh blood under the victim's head and chest,—an unlikely circumstance had the body been transported any considerable distance;[8] and it was discovered on a side road, where someone had driven the car's wheel over the de-

---

2. Title 77–10–5, U.C.A.1953.

3. Title 77–12–1, U.C.A.1953.

4. People v. Gregor, 359 Ill. 402, 194 N.E. 550; State v. Miller, 133 Or. 256, 289 P. 1063; Bridges v. State, 72 Ga.App. 390, 33 S.E.2d 850; State v. Wiedenfeld, 229 Wis. 563, 282 N.W. 621; Mayes v. State, 22 Ala.App. 316, 115 So. 291; State v. Schroyer, 66 Ohio App. 30, 31 N.E.2d 469.

5. Stribling v. State, 171 Ark. 184, 284 S. W. 38; Skipper v. State, 114 Fla. 312,

153 So. 853; Davis v. State, 75 Okl.Cr. 220, 130 P.2d 111; State v. Kincaid, 69 Wash. 273, 124 P. 684.

6. State v. Greene, 38 Utah 389, 115 P. 181; State v. Marasco, 81 Utah 325, 17 P.2d 919.

7. Marion v. State, 20 Neb. 233, 29 N.W. 911; Commonwealth v. Costley, 118 Mass. 1.

8. People v. Latona, 2 Cal.2d 714, 43 P. 2d 260.

ceased's foot,—all pointing to haste in disposing of the body and negativing the possibility of a lengthy transportation.

Counsel's assertion that there was no evidence that defendant was in Cache County or that he fired the fatal shot hardly can be upheld under the facts of this case, particularly where defendant by his own testimony, placed himself in Cache County when he stated he returned to Idaho via freight train, which, at the time of this homicide, we may take notice, necessarily would have to have traversed that county. We would blind ourselves to reason and reality if we were to hold that in every murder by gunshot, it is necessary, by direct proof, to establish exactly where the shot was fired and that positively and uncircumstantially he who fired it must have been identified as having been in the county of trial and at the scene of the killing. Attendant facts may point so strongly to presence at and participation in a homicide as to leave no reasonable doubt about the facts or the guilt of an accused.

As to 3): failure to instruct as to lessor included offenses: Aside from the incredibility of defendant's testimony as to his movements, whereabouts and other activities, with which one is impressed in reading the record, there is no evidence from which reasonable persons could conclude that the victim had died from a simple battery, affray, in a sudden heat of passion or otherwise than with malice aforethought

or as a result of a murderous intent. Under such circumstances, instructions as to lesser offenses would only confuse. Whether they would or would not seems to make little difference in this case, since it appears that counsel for the defense himself precluded the giving of any such instructions. He did like counsel did in State v. Sullivan,—[9] requested and the court gave, an instruction to the effect that if the jury had a reasonable doubt as to defendant's having committed the offense charged, they should acquit him. As we said in Sullivan case and as we repeat here:

"The requested instruction was given. It thus appears that the defense proceeded upon the theory that the defendant was entitled to an acquittal, unless the jury should find from the evidence beyond a reasonable doubt that the defendant was guilty of robbery. Defendant's requested instruction precluded the jury from finding the defendant guilty of either petit larceny or grand larceny. When the trial court, at defendant's request, gave an instruction which precluded the jury from considering the defendant's guilt or innocence of the crimes of petit and grand larceny, defendant cannot be heard to complain upon appeal, because the court did not instruct as to the law of such offenses."

We are not unmindful of State v. Cobo,[10] which counsel for defendant sends to plague

9. 73 Utah 582, 276 P. 166, 169.

10. 90 Utah 89, 60 P.2d 952, 959.

us. In some quite unnecessary obiter we said that "voluntary manslaughter was an offense *necessarily* included in the information charging murder in the first degree. It was the duty of the court to charge upon the subject, *whether requested so to do or not.*"[11] We now must reject such dictum.

Voluntary manslaughter is *not* necessarily included in first degree murder. Many times we have so indicated.[12] Nor is it always the duty of the court to instruct on the lesser offenses,[13]—for example, where either a conviction or outright acquittal of a particular offense is mandatory, leaving no room to hold an accused for any other offense.[14] Nor must the court always instruct as to lesser offenses whether requested so to do or not. A highly skilled advocate, conscientiously and deliberately believing it to be of benefit to his client, may not request and may even resist, instructions on intermediate offenses, or may request an instruction precluding instructions on lesser offenses, as was done in the Sullivan case, supra, and as was done in this case, being convinced that the state has not proved the offense charged beyond a reasonable doubt, and not wishing to subject his client to the possibility of conviction of some other of-fense. Besides, it would seem palpably unreasonable to allow one to sit by and deliberately refuse to request instructions as to lesser offenses, with positive assurance of another trial if his client be convicted of the charge against him.

The great weight of authority is to the effect that if no request is made for instructions on lesser offenses, and none is given, such failure to instruct is not reviewable as a matter of right on appeal.[15] We subscribe to such view. It is no difficult task, at the close of a criminal case, for counsel to make a simple request for instructions as to included offenses, if he wants them given, or remain silent, depending on his studied decision as to which course better may serve his client.

We confine our holding to the particular situation where instructions *are not requested* and *not given*. As to the situation where instructions are not requested, and there may be some evidence touching included offenses, we believe the trial court, in its sound discretion, based on the evidence presented, and after paying due respect to the fact that, as a procedural choice deemed beneficial to his client, counsel pur-

---

11. Italics ours.

12. State v. Thorne, 41 Utah 414, 126 P. 286; State v. Mewhinney, 43 Utah 135, 134 P. 632, L.R.A.1916D, 590; State v. Oblizalo, 60 Utah 47, 205 P. 739; State v. Condit, 101 Utah 558, 125 P.2d 801; State v. Matteri, Utah, 225 P.2d 325; State v. Angle, 61 Utah 432, 215 P. 531. See also: 21 A.L.R. 603 et seq.

13. Ibid.

14. Ibid.

15. State v. Sullivan, 73 Utah 582, 276 P. 166 and cases cited therein. State v. Dubois, 98 Utah 234, 98 P.2d 354; State v. Ferguson, 74 Utah 263, 279 P. 55; State v. Peterson, Utah 1952, 240 P.2d 504.

posely and deliberately may have concluded not to ask for instructions as to included lesser offenses, should be allowed to determine whether or not such instructions should be given.

The trial here was long and arduous, and Mr. Oliver, accused's counsel, did about everything a lawyer could do for his client, including the preparation of an excellent brief and the presentation of an able argument before this court,—all without compensation or hope of reward. He is to be commended, as are all lawyers who perform such public service on behalf of their fellow man.

McDONOUGH, C. J., and WORTHEN, J., concur.

WADE, J., concurs in the opinion of Mr. Justice HENRIOD and also in the comments of Mr. Justice CROCKETT.

CROCKETT, Justice (concurring).

I concur in affirming the judgment.

I agree that under the circumstances of this case it was not prejudicial error for the court to fail to instruct on lesser included offenses. However under some circumstances, where the evidence would plainly indicate that the jury should properly consider lesser offenses, I think it might be error for the trial court not to instruct with respect to them, even if counsel made no request. It is elementary that it is the duty of the court to present to the jury a statement of the elements of the offense charged; and that " * * * where the accused is charged with a greater offense, he is nevertheless entitled to an instruction that the jury may convict him of a lesser offense if included within the greater; * * *."[1]

---

1. State v. Hyams, 64 Utah 285, 230 P. 349; State v. Barkas, 91 Utah 574, 65 P.2d 1130.