Argued October 26, 1964, affirmed March 24, 1965

# STATE OF OREGON *v.* JONES
400 P. 2d 524

*Donald R. Duncan,* Athena, argued the cause and filed a brief for appellant.

*George L. Anderson, Jr.,* District Attorney, La Grande, argued the cause and filed a brief for respondent.

Before McALLISTER, Chief Justice, and PERRY, SLOAN, O'CONNELL, GOODWIN, DENECKE and LUSK, Justices.

McALLISTER, C. J.

The defendant was indicted in Union county of sodomy (ORS 167.040), was found guilty by a jury, and sentenced to imprisonment in the penitentiary for a term of five years, from which judgment he appeals.

The indictment charged that the crime was committed in Union County, Oregon. After the state had rested, the defendant moved for a judgment of acquittal on the ground that the state had failed to prove that the crime had been committed either in the State of Oregon or in Union county. The denial of that motion is the only error assigned.

■■ We will first consider the question of venue in Union county. Article I, § 11, of the Constitution of Oregon, guarantees the defendant a trial "in the county in which the offense shall have been committed." This court has frequently stated that venue is a material allegation of the indictment and must be proved beyond a reasonable doubt. *State v. Evans,* 143 Or 603, 612, 22 P2d 496 (1933); *State v. Miller,* 133 Or 256, 259, 289 P 1063 (1930); *State v. Harvey,* 117 Or 466, 471, 242 P 440 (1926); *State v. Casey,* 108 Or 386, 403, 213 P 771, 217 P 632 (1923). It is also the rule that venue

need not be proved directly, but may be inferred by the jury from all the evidence in the case. *State v. Evans,* supra; *State v. Eppers,* 138 Or 340, 346, 3 P2d 989, 6 P2d 1086 (1932); *State v. Miller,* supra; *State v. Casey,* supra.

The state concedes that the proof of venue is minimal, but relies on judicial notice to supplement the proof and cites *State v. Eppers,* supra, and *State v. Casey,* supra. To those cases might be added *State v. Miller,* supra, and *State v. Drake,* 127 Or 585, 589, 272 P 889 (1928), and possibly others. Typical of the statements found in those cases is the following taken from *State v. Casey,* supra:

> "For the purpose of determining venue, courts will take judicial notice of well-known geographical features, the division of states into counties, cities and towns, and the boundary lines of such counties, cities and towns within the state, when fixed by public law: 13 Ency. of Ev. 930; Section 729, Or. L." 108 Or at 403.

■ We think, however, that the cases cited are either not in point or wrongly decided. If venue must be proved to the satisfaction of the jury beyond a reasonable doubt, how can venue be established by judicial knowledge taken by an appellate court long after the trial? By the same token, how can judicial notice taken by the trial court support the verdict of the jury if such knowledge is not communicated to the jury? Permitting either the trial court or this court to decide venue from facts judicially noticed but not communicated to the jury would deprive the defendant of a trial by jury on an issue of fact alleged in the indictment.

■ In order for the jury to base its verdict on any facts judicially known, it is necessary for the court to

"declare such knowledge to the jury." ORS 136.310.⊙ In *State v. Magers*, 35 Or 520, 57 P 197 (1899), the court held that it was error for the court to refuse to declare to the jury "at what hour the sun set on that particular day, that they might be able intelligently to judge of the credibility of the witness, and of the possibility of his being able to identify the men at the time he saw them." 35 Or at 526. In *Scott v. Astoria Railroad Co.*, 43 Or 26, 40, 72 P 594 (1903), this court said:

> "* * * In all cases in which judicial notice of facts may be taken by the court, if it is not sufficiently advised thereon, it may resort for its aid to appropriate books or documents for reference (B. & C. Comp. § 720), and declare its knowledge to the jury, who are bound to accept it as conclusive: B. & C. Comp. § 136; *State v. Magers*, 35 Or 520 (57 Pac. 197). * * *"

In *Mayhew v. Yakima Power Co.*, 72 Wash 431, 130 P 485 (1913) the court said: "If the court does judicially know it, it follows on elementary law that the court should so charge the jury."

In this case the trial court did not declare to the jury any facts judicially known by the court. In the absence of any such declaration the judicial knowledge in the mind of the court could not be used by the jury in arriving at its verdict. The duty of the court to declare its judicial knowledge to the jury is generally recognized. See *Mobile & Birmingham Railroad v. Ladd*, 92 Ala 287, 9 So 169 (1891); *People v. De Soto*, 33 Cal App2d 478, 92 P2d 466 (1939); *People v. Mayes*, 113 Cal 618, 625, 45 P 860 (1896); *Beardsley v. Irving*,

---

⊙ ORS 136.310 * * * "Whenever the knowledge of the court is by statute made evidence of a fact, the court shall declare such knowledge to the jury, which is bound to accept it as conclusive." For an identical section in the civil code see ORS 17.245.

81 Conn 489, 71 A 580 (1909); *State v. Stevens,* 56 Kan 720, 44 P 992 (1896).

■ We think this case turns on the simple question of whether the jury could infer from the evidence that the crime occurred in Union county. The only evidence that the crime was committed in Union county is contained in the testimony of a deputy sheriff from Pendleton, in Umatilla county, who was guided to the scene of the crime by the victim. The victim of the crime was a ten-year old girl, with whose mother the defendant had been living for several years without benefit of marriage. The girl testified that the defendant took her in a car from her home in Umapine to Milton-Freewater and from Milton-Freewater to "show her a road he had built"; they went a little ways past Tollgate on the Tollgate road towards Elgin; that they turned off that road onto a rocky road, went about three miles, then turned onto a real muddy road, traveled on that road about a mile, then parked, and then walked a little ways back in the forest; that they spent the night in the forest at that point, where the crime was committed.

After defendant's conduct had been reported to the authorities, the deputy sheriff from Pendleton went to the scene of the crime with the victim. The officer testified as follows:

"A Well, we proceeded out Highway 11 south of Milton-Freewater and turned on 204 and through Tollgate.

"Q Two 0 four is the Tollgate Road, is that correct?

"A That is correct, yes, sir—it comes to Union, I believe, across the mountain—and after passing Tollgate we travelled approximately, oh, seven, maybe six miles, and at that point she asked me

to turn, which would have been to my right, and off from 204, which at that point the road was marked U. S. Forest Road, North 31, I believe.

"Q Now, how far past Tollgate did you say you went?

"A Approximately six miles before we turned off on the Black Mountain Road.

"Q Do you know where the Umatilla County boundary line is?

"A Yes, sir, I do.

"Q Did you cross that line?

"A Yes, sir, we crossed it approximately eight miles from the time we—until we got into where I figured we were at.

"Q Into Union County?

"A Yes, sir.

"Q All right, you may proceed.

"A We travelled about a mile and a half or two miles down this road, and due to the fact of the rainfall and the muddy condition of the road I was unable to go any farther with the police car so I parked the car and she led the way and led me into where she said, 'This is where he parked our car.'

"Q How far would that be, approximately?

"A That was approximately, oh, a mile, three-quarters off the road or maybe a little more.

"Q Off the forest road?

"A Right.

"Q And how far from the main Tollgate Highway 204?

"A I would say approximately two miles.

"Q And what, if anything, did you see there?

"A Well, you could see the tire prints of a car that had been parked there, and from there she led us on into the timber approximately 500 yards.

"Q And what caused you to stop?

"A She said, 'This is where it happened.' "

We think the above testimony was sufficient to support a finding by the jury that the crime was committed in Union county.

We also think the jury could infer from the evidence that the crime was committed in Oregon. The deputy sheriff testified that he lived in Pendleton, Oregon, and that the victim and her mother resided in Umapine, Oregon, which was about seven miles from Milton-Freewater. The mother of the victim testified that in Weston, Oregon she had represented herself to be the wife of the defendant. We think that the jury could infer from that evidence that the Union county about which the officer testified was the Union county in Oregon in which the jurors lived and the case was being tried.

We believe the evidence was sufficient to support the verdict, and affirm the judgment.