RICHARD C. GUNNING

v.

THE PEOPLE OF THE STATE OF ILLINOIS.

*Opinion filed February 20, 1901.*

1. INDICTMENT—*what essential in indictment against assessor for offer to receive bribe.* It is essential to the validity of an indictment against a town assessor for offering to receive a bribe to reduce the assessment upon certain real estate, that it appear from the indictment that the real estate is situated in the town for which the accused was acting as assessor.

2. JUDICIAL NOTICE—*when court cannot take judicial notice that lot is in certain town.* Courts cannot take judicial notice that real estate described as "lot 1 of the assessor's re-subdivision of sub-lots 1 to 5, in block 58, of the original town of Chicago, together with the building thereon, commonly known as the Reliance Building," is situated in the town of South Chicago.

3. PLEADING—*all necessary facts should be pleaded with reasonable certainty.* It is not permissible, in pleading, to leave a fact necessary to be alleged to be derived by inference from an allegation of a mere conclusion of law. Nor has this rule been changed by section 6 of division 11 of the Criminal Code.

MAGRUDER, J., dissenting.

*Gunning* v. *People,* 86 Ill. App. 676, reversed.

WRIT OF ERROR to the Branch Appellate Court for the First District;—heard in that court on writ of error to the Criminal Court of Cook county; the Hon. A. H. CHETLAIN, Judge, presiding.

EDWARD H. MORRIS, for plaintiff in error.

E. C. AKIN, Attorney General, (CHARLES S. DENEEN, State's Attorney, and W. M. MCEWEN, of counsel,) for the People.

Mr. JUSTICE CARTER delivered the opinion of the court:

Richard C. Gunning, the plaintiff in error, was indicted and convicted of corruptly proposing to receive a bribe to influence his official action as assessor of the

town of South Chicago by reducing the assessment which had been made for purposes of taxation on a certain lot in Chicago, and was adjudged to pay a fine of $3500, under sections 31 and 32 of the Criminal Code. The Appellate Court having affirmed the judgment, Gunning sued out this writ of error to bring the record before this court for review.

The indictment consisted of thirty counts, all charging the same offense, varying in manner of stating particular facts, but none of them alleged that the real estate upon which the assessment was sought to be reduced was situated in the town of South Chicago, of which town Gunning was assessor. The court overruled the motion of the defendant below to quash the indictment, and although it was proved on the trial that the lot in question was in the town of South Chicago, such proof would not, of course, cure such a defect in the indictment, if defect it was, for proofs without allegations are as ineffectual as allegations without proofs.

The evidence upon the issue of guilt or innocence was conflicting and irreconcilable, but the most serious question presented to us is upon the assignment of error that the court erred in refusing to quash the indictment. A case involving such an offense is of grave importance to the public and demands careful consideration, and such a consideration we have endeavored to give it.

The charge in each of the counts was, in substance, that said Richard C. Gunning was the duly elected and qualified assessor of said town of South Chicago, and while acting as such officer, on, to-wit, etc., unlawfully and corruptly did propose to receive a bribe to influence his official action as such assessor, in this: that he, said Gunning, then and there proposed to one Charles Fellows that upon the payment then and there by him, said Fellows, to him, said Gunning, of the sum of $1000, he, the said Gunning, would reduce the assessed valuation, to-wit, $100,000, for the taxes of the year 1897, upon the

following described real estate, to-wit, lot 1 of the assessor's re-subdivision of sub-lots 1 to 5, in block 58, of the original town of Chicago, together with the building thereon, commonly known as the "Reliance Building," and the improvements thereon, all in said county of Cook, in the State of Illinois; to the assessed valuation, to-wit, $91,970, which had been made on said property for the taxes of the year 1896.

It needs hardly to be stated that Gunning had, as assessor of the town of South Chicago, no power or official authority to reduce the assessment on real estate situated outside of said town. Unless, therefore, the lot in question was situated in said town he was wholly without official authority to make the reduction he is charged with having offered to make for the alleged bribe. It follows, of course, that it must appear from the indictment before it can be sustained, that said lot was situated in said town, for to the assessment of property therein Gunning's official duty was confined. Thus, in *VanDusen* v. *People*, 78 Ill. 645, it was held that an assessor, not being authorized to assess property outside of his township, cannot lawfully administer outside of such township an oath to a person concerning his rights and credits liable to assessment, and a conviction of perjury was reversed because the evidence failed to show that the affidavit was sworn to in the township before the assessor where he had the power to administer the oath. We need not, however, dwell on this branch of the question, for there is no controversy, and could be none, between counsel respecting it.

But it is contended, for the People, that from what is alleged the court will take judicial notice that the said property is situated in the town of South Chicago. If this contention be correct, then no further allegation on that subject was necessary, for matters of which the court must take notice need be neither alleged nor proved. The question is, can the courts of the jurisdiction take

judicial notice that the property, as above described, is situated in the town of South Chicago? A mere statement of the question would seem to imply a negative answer, if established rules of law governing the subject are to be regarded. But counsel say, and the court will take notice, that the original town of Chicago was incorporated by an act of the legislature in 1835, and that it included "all that district of country in sections 9 and 16, north and south fractional section 10 and fractional section 15, in township 39, north, range 14, east of the third principal meridian," (Laws of 1835, p. 204,) and that the town of South Chicago now includes in its limits a part of the original town of Chicago. But even if the courts could notice which of the sections of land, or parts thereof, were included in these several towns, how could the court say, from its judicial knowledge, which of them includes the subdivision which contains the lot in question? From the description given, the lot may as well be supposed, by all except those having special information on the subject, to be in the west or the north town as in the south town. Courts will take judicial cognizance, without allegation or proof, of the political division of the State into counties, towns and cities; that a county is under township organization and that a particular township is in a certain county, and of the relative location of such towns with respect to each other. (See 1 Greenleaf on Evidence, sec. 6.) And the author also says: "In fine, a court will generally take notice of whatever ought to be generally known within the limits of its jurisdiction." (See, also, 1 Phillips on Evidence, p. 625; 12 Am. & Eng. Ency. of Law, 151; an exhaustive note to *Lanfear* v. *Mester,* 89 Am. Dec. 679; *Dickenson* v. *Breeden,* 30 Ill. 279; *People* v. *Suppiger,* 103 id. 434; *Wilcox* v. *Jackson,* 109 id. 261.) They will also take notice of the boundaries of towns when they have been fixed by law, and counsel for plaintiff in error in this case concedes that the court could take judicial cognizance of the bound-

aries of the several towns in Cook county, but insists, and it seems to us correctly, that knowing such boundaries would not fix the location of the lot in question with reference to such boundaries. In *Breedy* v. *Page*, 59 Cal. 52, it was held by a divided court that the courts of that jurisdiction would take notice of the streets of SanFrancisco and their relation to each other and the direction in which they run. But that decision was based on a statute of that State. This court has held that it could not judicially know that certain streets mentioned in the record were in the city of Chicago. (*Dougherty* v. *People*, 118 Ill. 160; *Moore* v. *People*, 150 id. 405.) And in *Cicotte* v. *Auceaux*, 53 Mich. 227, it was held that the Supreme Court of that State had no judicial knowledge of the contents of plats of Detroit or of Detroit lands, except as affected by legislation or other public action. We know of no law of this State identifying or fixing the location of block 58, or its subdivisions, in the original town of Chicago, by which we or the court below could determine its *situs* as respects the boundaries of the three towns by which the said original town is divided. Nor would it be a safe precedent to establish, to declare that its location with reference to the boundaries of the south town, or the building commonly called the "Reliance Building," had become so universally or generally known as to have become a matter of public knowledge, to be accepted without proof in all cases where it might be collaterally involved. In *Brown* v. *Piper*, 91 U. S. 42, it was said: "This power is to be exercised with caution. Care must be taken that the requisite notoriety exists. Every reasonable doubt upon the subject should be resolved promptly in the negative."

But it is urged that the question has been in effect decided by this court, and the Appellate Court seems to have so concluded. In *Gardner* v. *Eberhart*, 82 Ill. 316, where a debtor occupied four contiguous town lots all in one enclosure, numbered 12, 13, 14 and 15, a tenant occu-

pying a house on 12 and a shop being on 14, the question
arose whether the debtor was entitled to all of the lots
in the one enclosure as his homestead exemption. In
deciding the case the court used this language (p. 321):
"The court will take notice of the subdivision of town
and city property into blocks and lots, as well as the
legal subdivision by government surveys of land in the
country, and where several forty-acre tracts lie contigu-
ous, or where several village or city lots lie contiguous,
and where a debtor has a dwelling on any given forty-
acre tract which, with the buildings thereon, is of the
value of more than $1000, or where a debtor has a dwell-
ing on any given town or city lot which, with the build-
ings thereon, clearly exceeds in value $1000,—in such
case the law regards the forty acres, or village or city
lot on which the debtor's residence is situated, as the
'lot of ground by him occupied as a residence.'" Similar
language was used in *Sever* v. *Lyons,* 170 Ill. 395, in decid-
ing a question of homestead; but, obviously, the court
did not decide or intend to decide that the court would
take judicial notice of plats of subdivisions of urban
lands, or of the subdivisions themselves, with reference
to questions of the location of the different lots and
blocks, but only that such lands were, as a rule, subdi-
vided into blocks and lots, thus enabling the court, by
making use of a matter of common knowledge, to know
and apply the proper meaning intended by the legisla-
ture by the clause, "lot of ground occupied by him as a
residence," in the Homestead act.

But it is unnecessary to pursue this subject further.
While it is doubtless true that matters of which courts
will take judicial notice have broadened in their scope
as public information has increased, we know of no rule
or precedent, and have been referred to no authority,
which would sustain a decision that a court would take
judicial notice of the precise location of a mere city lot
in a subdivision or re-subdivision of urban lands, with

respect to township or other political divisional lines, without the aid of a public statute.

The point is also made, that from the allegation that Gunning offered to receive the alleged bribe to influence his official action as assessor in reducing the assessment on the said lot it is properly deducible that, as his official action was confined to the assessment of property in the town of South Chicago, the lot must have been situated in that town. It is not permissible, in pleading, to leave a fact necessary to be averred to be derived by inference from an allegation of a mere conclusion of law. All necessary facts should be pleaded with reasonable certainty, and section 6 of division 11 of the Criminal Code has not dispensed with that rule. (*Prichard* v. *People*, 149 Ill. 50; *McNair* v. *People*, 89 id. 441; 1 Bishop on Crim. Proc. sec. 627; *Thompson* v. *People*, 96 Ill. 158.) In *People* v. *Davis*, 112 Ill. 272, (an action of debt to recover delinquent taxes,) it was held, on demurrer, that a declaration was insufficient in law which failed to state the facts from which the liability, as a conclusion of law, resulted; that the averment that the property was taxable at the place in which it was assessed was the statement of a conclusion of law, and was bad on demurrer. But in the case at bar there is not even an allegation as specific as that. It is not even averred that Gunning, as assessor, had the power or authority to assess the property in question or to reduce the assessment upon it. It is plain the indictment should have been quashed.

The judgments of the Appellate Court and the criminal court are reversed, and the cause is remanded to the criminal court of Cook county for further proceedings not inconsistent with this opinion.

*Reversed and remanded.*

Mr. JUSTICE MAGRUDER, dissenting.