28 15
[30 324]

# THE STATE OF UTAH, Respondent, v. W. E. GORDON, Appellant.

### No. 1546.   (76 Pac. 882.)

1. **Grand Larceny: Evidence: Sufficiency.**
Evidence *held* insufficient to establish grand larceny of horses.

2. **Same: Instructions: Aiding and Abetting.**
In a prosecution for grand larceny, a charge that, though defendant did not personally steal the property described in the information, yet if he aided and abetted in its commission, or if he was not present at its commission, yet advised or encouraged its commission, then he would be as guilty as those who in fact did commit the crime under such advice or encouragement, was, as an abstract proposition of law, erroneous.

4. **Same: Applicability to Evidence.**
It is erroneous to give instructions based on a state of facts. which there is no evidence tending to prove, or which the undisputed evidence shows does not exist, although such instructions contain correct statements of the law.

3. **Same: Finding: Evidence: Sufficiency.**
In a prosecution for larceny of horses, the fact that the animals were killed in defendant's stockyards, and the carcasses afterwards removed and deposited in an obscure corner of his field, a mile distant, was not sufficient to support a finding that defendant aided, abetted, or advised the. commission of the crime, especially in view of positive and uncontradicted testimony of defendant and other witnesses which showed that he had nothing whatever to do with. the killing of the horses.

5. **Same: Withdrawal of Case from Jury.**
Where there is an absolute lack of evidence to sustain a verdict in a criminal case, it is error to submit the case at all to the jury.

6. **Same: Discharge of Defendant by Supreme Court.**
Where the State has failed to make out a prima facie case against defendant, and it appears from the record that there is no probability that it will be able to produce other or different testimony from that produced at the first trial, the case should be dismissed, and defendant discharged from custody.

(Decided May 13, 1904.)

Appeal from the Seventh District Court, San Juan
        County.—*Hon. Jacob Johnson,* Judge.

The defendant was convicted of grand larceny and
appealed.

REVERSED.

*Messrs. Warner, Houtz & Warner* and *Arthur
Brown, Esq.,* for appellant.

*Hon. M. A. Breeden,* Attorney-General, and *Hon.
W. R. White,* Deputy Attorney-General, for the State.

McCARTY, J.—The information in this case, in
substance, charges that the defendant on the fifth day
of December, 1902, at San Juan county, did feloniously
steal and drive away two mares, the property of one
D. B. Perkins. The defendant was found guilty, and
sentenced to imprisonment in the State prison for a
period of twenty months. From this judgment he ap-
pealed to this court.

There is no material conflict in the evidence in
this case, and the facts proven are as follows: D. B.
Perkins, the owner of the animals the defendant
was convicted of stealing, on the second day of
December, 1902, started with the two mares and
four other horses from Monticello with the intention of
taking the entire band to Dry Valley, which is about
twenty miles north from Monticello. When a short dis-
tance north from the Gordon & Carlisle Ranch, the
home of defendant, he left the entire band loose on the
highway, and proceeded to Dry Valley without them.
A short time afterwards, on the same day, defendant
was seen driving these same horses and one other
towards his (defendant's) corral on the ranch referred
to. Peter Bailey, a witness for the State, testified on

this point as follows: "That while going to Monticello, when nearing the Gordon & Carlisle Ranch, he saw a bunch of horses (and among them the two mares mentioned in the information); that as he approached the horses he saw Mr. Gordon (defendant) driving them; . . . that it was broad daylight, about four o'clock in the afternoon; that Gordon was well acquainted with him; and that Gordon could see who he was, and made no attempt to avoid him, but drove the horses right along, and passed within a distance of about fifty yards." It further appears from the uncontradicted evidence that Gordon drove the horses into his corral on the occasion referred to for the purpose of catching a horse of his own that was in the band, and, after securing his own horse, turned the rest of the horses, including the mares in question, out of the corral, and set his dogs onto them, and ran them away from the corral and yards. On the fourth day of December, Gordon went to Monticello, and did not return to the ranch until the eighth, on which date he again left the ranch, and, in company of one James Matthews, started to Dry Valley with a herd of bucks, where they arrived December 10, 1902, and Gordon did not return to the ranch until about December 20. Matthews, however, returned in about a week after they left with the bucks, and remained at the ranch for one day, and then returned to the sheep herd. Peter Miller, who was in charge of the ranch during the absence of Gordon, testified that the day after Matthews came in from the sheep herd, and while he was at the ranch, he (Miller) was out hauling wood; that, when he came back with his load of wood, Matthews invited him out to the stockyards, where he saw a number of dead horses; that they had been killed the day while he (Miller) was gone for wood; "that Matthews stated to him that the horses jumped into the grain stacks and broke the fence down, and that he (Matthews) had got mad . . . and killed them;" that he (Miller) informed Matthews that the act was not ap-

proved of, and that he, would have to remove the horses; that the animals laid there ten or twelve days, when they were removed by Matthews; that Gordon was absent from the ranch when the animals were killed, but returned a few days afterwards, when he (Miller) related the facts to him. Gordon was sworn as a witness, and testified that he was not at the ranch when the horses were killed, and had nothing to do with the killing, and never sanctioned or approved of the killing of the animals. The facts and circumstances testified to by other witnesses, both for the State and the defense, tend to show that Gordon was not at the ranch at the time the animals were killed. On the twenty-fifth day of January, 1903, the carcasses of the two animals mentioned in the information, together with those of five other horses, and that of a burro, were found in defendant's field, where Matthews stated he deposited them. Soon after it was known to Perkins and others that the animals had been killed, Matthews left that part of the country, and has not been heard from since.

When the State rested, defendant moved the court to dismiss the case for the reason that the evidence produced on the part of the State was insufficient to show that the crime of grand larceny had been committed, or that the defendant had anything to do with the killing of the horses. The motion was denied, and the defendant now assigns the ruling of the court as error. The motion should have been granted. When the State rested its case, the only proof before the court that defendant had anything to do with the animals in question was that he was seen driving them, with other horses, towards his corral, on the second day of December, the day on which Perkins turned them loose on the highway near defendant's ranch, and some six or seven weeks later the carcasses, together with those of four other horses, and that of a burro, were found in his field about a mile from the corral, and that there were signs of wagon tracks leading from defendant's stockyards to where the carcasses were lying;

also impressions in the snow in the stockyards indicating that the animals' had been killed there, and then hauled away, by means of a wagon, into the field where they were found. While these facts tended to show that the crime of malicious mischief had been committed by some person employed on, or in some way connected with the management of, defendant's ranch, they did not establish a case of grand larceny. Not only did the State fail to connect the defendant in the remotest degree with the killing of the animals mentioned, but the uncontradicted evidence of defendant's witnesses, some of whom appeared to have no personal interest whatever in the result of the case, affirmatively shows that he had nothing whatever to do with the killing of the animals. Neither did he have any knowledge of such killing until several days after it occurred.

The court gave the jury the following instruction: "If you believe from the evidence, beyond a reasonable doubt, that the defendant did not personally take and steal the property described in the information, yet, if he aided and abetted in its commission or if he was not present at its commission, yet advised or encouraged its commission, then he would be as guilty as those who in fact did so commit the crime under such advice or encouragement, if in fact such crime was committed." Defendant excepted to this instruction, and now assigns the giving of it as error. The instruction, as an abstract proposition, is erroneous; but even if the principles of law had been correctly stated therein, they would have no application to the facts in this case. We have made a thorough examination of the record, and fail to find a scintilla of evidence that tends to show, or from which an inference can reasonably be drawn, that defendant ever advised, or in any way abetted in the commission of, the killing of the animals mentioned. The fact that the animals were killed in the defendant's stockyards, and the carcasses afterwards removed and deposited in an obscure corner of his field, a mile distant, is not sufficient

to support a finding that he aided, abetted, or advised the commission of the crime, especially in view of the positive and uncontradicted testimony of defendant and other witnesses, which shows that he had nothing whatever to do with the killing of the horses. The rule is well settled that instructions should be confined to evidence produced at the trial. "It is erroneous to give instructions based on a state of facts which there is no evidence tending to prove, or which the undisputed evidence shows does not exist, and it makes no difference that such instructions contain correct statements of the law." 1 Blashfield, Inst. to Juries, 86, and cases cited; Sackett, Inst. to Juries, 82.

Not only did the court err in giving the foregoing instruction, but it was error to submit the case at all to the jury. As was said by the court in the case of State v. Seymour, (Idaho) 61 Pac. 1033: "'This is not a case where the evidence is conflicting. There is an absolute lack of evidence to sustain the verdict. In such a case the jury cannot arbitrarily ignore the evidence, when there is no conflict and the witnesses are unimpeached. If the jury could do that, it could find the defendant guilty without any evidence, and thus violate the well-established rule that a defendant cannot be convicted except upon evidence that establishes his guilt beyond a reasonable doubt. Any other rule would make the jury the arbitrary judges of the guilt of the defendant, irrespective of evidence produced at the trial."

The case is reversed. The State having failed to make out a prima facie case against the defendant, and as it appears from the record that there is no probability that it will be able to produce other or different testimony from that produced at the trial now under consideration, we are of the opinion that the case should be dismissed, and the defendant, if in custody, discharged. It is so ordered.

BASKIN, C. J., and BARTCH, J., concur.