## STATE v. MARASCO.

No. 5310.  Decided January 14, 1933.  (17 P. [2d] 919.)

326

*O. K. Clay* and *Knox Patterson,* both of Price, for appellant.

*Geo. P. Parker,* Atty. Gen., for the State.

STRAUP, C. J.

The defendant by the information was charged with arson, setting fire to a building which contained personal property owned by the defendant and which was insured against loss by fire by the Royal Insurance Company. He was convicted, and appeals. The state moves to dismiss the appeal on the ground that the transcript of the record on appeal was not filed with the clerk of this court within the time prescribed by rule 2 of the Supreme Court. The rule provides that, "in all cases where an appeal shall be perfected, a transcript of the record shall be filed in this Court within thirty days after such appeal shall have been perfected, unless further time is granted by the Court, or a justice thereof." The verdict was rendered and filed September 26, 1931. October 9, 1931, the defendant was sentenced to imprisonment in the state prison for an indeterminate period. A motion for a new trial duly filed was overruled (October 17, 1931). Notice of appeal was filed November 16, 1931. The transcript of the record on appeal was filed in this court April 25, 1932. November 7, 1931, the trial court ordered that the court reporter transcribe the testimony in the cause at the expense of the state and furnish the transcript to the defendant or his counsel. A bill of exceptions was settled and filed in the court below March 25, 1932. The time to settle the bill was by the district court, from time to time, extended to and including the time it was settled and filed. The time for filing the transcript of record on appeal was not extended

by this court or by a justice thereof. The transcript of the record on appeal, however, was filed in this court within thirty days after the bill of exceptions was settled and filed, but more than five months after the notice of appeal was served and filed.

With respect thereto we have presented two divergent views: By the state it is contended that the appeal "was perfected" when the notice of appeal was served and filed and under the rule of this court the defendant was required to file the transcript of the record on appeal within thirty days thereafter, unless that time was extended by this court or a justice thereof, and admittedly no such extension of time was had; by the defendant it is contended that the appeal was "not perfected" until the bill of exceptions was settled and filed within the time prescribed by the statute or enlarged by the trial court, which admittedly was done, and hence the filing of the record on appeal within thirty days thereafter was within time as by the rule provided. We have heretofore, on motion of the respondent in both civil and criminal cases, dismissed appeals where the transcript of the record on appeal was not filed in this court within thirty days, in criminal cases after notice of appeal was served and filed and the giving of an undertaking for costs on appeal as by the statute provided, unless for cause shown the appellant was relieved from his default in not filing the transcript of the record within the time prescribed by the rule. To that effect opinions have been rendered and filed in various causes in both civil and criminal actions.

The defendant, in support of his contention and in resisting the motion to dismiss, relies on the case of *Thompson* v. *Reynolds*, 59 Utah 416, 204 P. 516. It will be observed that was a civil and not a criminal action. Under the Code of Civil Procedure, Comp. Laws Utah, 1917, § 6992, providing that "the judgment roll and bill of exceptions, if there be one, shall constitute the record on appeal," section 7009 that, "if the appellant shall fail to cause such papers to be transmitted and filed in the supreme court within thirty days

after the perfecting of the appeal, the appeal may be dismissed on motion of the respondent," and under rule 2, it, in *Thompson* v. *Reynolds*, was held that "an appeal could not be perfected without a bill of exceptions, and will not be dismissed where the judgment roll and bill of exceptions were filed in the Supreme Court within the time allowed for preparing the bill of exceptions as extended by proper orders of the trial court." The case being a civil action and ruled under the Code of Civil Procedure, we need not now inquire into the correctness of the holding that an appeal in a civil action is "not perfected" until the settlement of a bill of exceptions, if there be one, and is not perfected by the service and filing of a notice of appeal and the giving of an undertaking for costs on appeal as provided by Comp. Laws Utah, 1917, § 6996, and as provided by section 7005 that "whenever an appeal is perfected, as provided in the preceding sections of this chapter," not as provided by section 7009 or sections subsequent to section 7005; and as theretofore held by this court in the case of *Butter* v. *Lamson*, 29 Utah 439, 82 P. 473, that extensions obtained and granted to settle a bill of exceptions did not extend the time for the filing of the record on appeal, unless such extensions were granted by this court or a justice thereof. Many courts have held that, in the absence of a statute to the contrary, an appeal in a civil action is perfected by serving and filing a notice of appeal and giving an undertaking for costs as by the statute provided. *White* v. *Sanders*, 99 Wash. 172, 168 P. 1140; *Schmuck* v. *Missouri, K. & T. R. Co.*, 85 Kan. 447, 116 P. 818, 2 Cal. Jur. 349 and 359. To that effect, too, is the case of *Butter* v. *Lamson*, supra.

However, we need not further pursue this, for the reason that, as we think, the matter in hand is controlled by the Code of Criminal Procedure, Comp. Laws Utah 1917, § 9216, which provides:

"Upon the appeal being taken, the clerk with whom the notice of appeal shall have been filed must, within ten days thereafter in case the bill of exceptions has been settled before the giving of said notice,

but if not, then within ten days from the settlement of the bill of exceptions if there be a bill of exceptions, without charge transmit to the clerk of the supreme court the notice of appeal, the record, and all bills of exceptions, instructions, and indorsements thereon, which shall constitute the record on appeal, and upon the receipt thereof, the clerk of the supreme court must file the same and perform the same service as in civil cases, without charge."

There being a bill of exceptions settled March 25, 1932, and within the time enlarged by the trial court, the clerk of that court under section 9216, without charge, was required to transmit the record on appeal, including the bill of exceptions, to the Supreme Court within ten days from the settlement of the bill; but, as is seen, the record was not so transmitted within the ten days, but within thirty days after the settlement of the bill. The appellant thus urges that in causing the record to be so transmitted he relied on rule 2, requiring the record to be transmitted within thirty days after the appeal "shall be perfected," and on *Thompson* v. *Reynolds,* that an appeal is not perfected until the bill of exceptions is settled, if there be one, within the time prescribed by the statute or enlarged by the trial court. If the appeal was not perfected until the bill was settled, then under rule 2 the record was transmitted within time. Whether under the rule an appeal in a criminal case is to be regarded as having been "perfected" when a notice of appeal is served and filed, or when the bill of exceptions, if there be one, is settled and filed, the rule is in conflict with section 9216, for that section says the record on appeal shall be transmitted to the Supreme Court within ten days from the "settlement of the bill of exceptions." Section 9216 without amendment or modification is in the Revised Statutes of 1898 (§ 4966), and existed in territorial days even before that, as shown by Comp. Laws Utah 1888 (§ 5145), and ever since has been in full force and effect, and is older than the rule itself, which was promulgated shortly after statehood in 1896. Nor may rule 2 be construed to mean that an appeal is not "perfected" until the record on appeal is

transmitted to the Supreme Court as under statutes in some jurisdictions it is so held (Elliott on Appellate Procedure, § 284), for the rule says that "in all cases where an appeal shall be perfected, a transcript of the record shall be filed in this Court within thirty days after such appeal shall have been perfected." Because of the conflict between rule 2 and section 9216, and of the holding in the *Thompson* v. *Reynolds* Case that an appeal is not perfected until a settlement of a bill of exceptions, no remiss or delicit should be visited on counsel for the appellant in relying on the rule and in transmitting the record on appeal in accordance therewith and not in accordance with section 9216.

The motion to dismiss the appeal is therefore denied, but with the observation that in the future transcripts of the record on appeal in criminal cases are required to be transmitted to this court as by section 9216 provided. Rule 2 in such particular, so far as it relates to transmitting records on appeal in criminal actions, is abrogated. Further we say not.

On the merits. A point is made that venue was not shown. By the information it was alleged that the crime was committed by setting fire to a building and goods contained therein "located on Lots 89 and 91, in Block 1, commonly known as Bryner's Subdivision of Helper, Carbon County, Utah." The only evidence as to venue is that the building was "located in the outskirts of Helper, not in the main business part of town"; that the defendant's place of business was "the west side of Helper, Bryner Subdivision." From such testimony it may reasonably be inferred that the building and goods destroyed by fire were located in Helper. We judicially know that Helper is an incorporated city of the third class. Comp. Laws Utah 1917, § 527. Helper being an incorporated city or town, the trial court and jury could judicially know that it was in Carbon county. *State* v. *Reader*, 60 Iowa 527, 15 N. W. 423; *Doyle* v. *Village of Bradford*, 90 Ill. 416; *State* v. *Brooks*, 8 Kan. App. 344, 56 P. 1127; *Gunning* v. *People*,

189 Ill. 165, 59 N. E. 494, 82 Am. St. Rep. 433, and notes 442; *Green & Son's* v. *Lineville Drug Co.*, 150 Ala. 112, 43 So. 216, 124 Am. St. Rep. 17, and notes 34; 7 Encyc. of Evid. 1013; 15 R. C. L. 1083. What in such particular the trial court in the cause could judicially know or was required to know; we know. It would have been better had the trial court charged the jury that they could judicially know that Helper is in Carbon county, but no complaint is made of that. The assignment as to venue is disallowed.

A further point is made of insufficiency of the evidence to connect the defendant with the commission of the offense. By the evidence on behalf of the state it is shown that the defendant at the place in question was engaged in a soft drink parlor and confectionary business; that the furniture and fixtures in the building were insured in the sum of $2,700, and that proof as to the amount of loss furnished the insurer was $2,305; that between 2:30 and 3 o'clock a. m. on June 12, 1931, persons living nearby were aroused by a loud explosion which shattered the building, felled the walls, and threw brick fifty feet or more; that a Chevrolet coach, badly burned and containing a couple of ten-gallon kegs, one of which "smelled" as though it had gasoline in it, two cans of tobacco, and a couple of boxes of candy, was found standing on fallen brick near the demolished building. Two witnesses living nearby testified that they heard the explosion, and on looking out of the window saw a man running from the building and across a nearby vacant lot, but they did not know who it was and were unable to identify him. Evidence was also given by the state to show that the automobile prior thereto belonged to one Tony Turzo, but in June, 1930, he transferred it to his uncle, who transferred it to Joe Mascaro, and between June, 1930, and June, 1931, the car was in the possession of Joe Mascaro. What relation Joe Mascaro or Turzo was to the defendant, Mike Marasco, is not shown, nor is there anything to show that any business relation of any kind existed between them or either of them or that the defendant at any

time was possessed of or used the automobile. Joe Mascaro lived at Lark, Utah, and a day or two before the fire he at Lark let Turzo have the automobile. Another witness testified that about 3:30 a. m. of the morning of the fire the defendant and Turzo came to the house of the witness at Castlegate, about four miles from Helper, and that the defendant hired him to drive the defendant and Turzo to Salt Lake City; that on the way the defendant told the witness to "step on it and drive a little faster" and that the defendant told the witness "not to say nothing about taking them in"; that, when they got within four miles of Springville, which is about 66 miles from Castlegate, and about 53 miles from Salt Lake City, the automobile which the witness was driving broke down, and the defendant and Turzo got out and walked; that about a week before the trial the defendant again came to the house of the witness and told him "to say nothing down in court and to say it wasn't him." Further evidence was given to show that the defendant and Turzo were seen in Provo, about 45 miles from Salt Lake City, at about 6 o'clock in the morning of the fire. The state gave further evidence to show that the defendant was registered and was at a hotel in Salt Lake City on June 7, 10, and 12; that the defendant about two days after the fire called at the City Hall at Helper and told the marshal that "they almost ruined me," and stated that he first learned of the fire the day before through the proprietor of the hotel who told him that his place had been burned and showed him an account of it in a newpaper, and that the defendant took the first train and went to Helper; and until then he was continuously in Salt Lake City. By evidence of the state it also was shown that during the time the defendant was in Salt Lake City he had another, Joe Greco, in charge of his business at Helper.

The question thus is: Is the evidence that the defendant's fixtures and furniture were insured and that about thirty or forty minutes after the fire he was seen at Castlegate, and hired a man to drive him and Turzo to Salt Lake City,

and told the witness to say nothing about it, that the defendant and Turzo were seen at Provo at 8 o'clock in the morning of the fire, the defendant's statement to the city marshal to the effect that he on the morning of the fire was in Salt Lake City and that he first learned of the fire through the proprietor of the hotel where the defendant was registered June 7, 10, and 12, sufficient to connect the defendant with the commission of the offense? That some of such testimony shows suspicious circumstances may well be conceded. Perhaps the most probative is the testimony that the defendant at Castlegate, about 4 miles from the scene of the crime, about thirty or forty minutes after the building was demolished and on fire, hired a man to drive him to Salt Lake City and admonished the driver to say nothing about it, from which some elements in the nature of a flight might be inferred. The corpus delicti being proven, the fact that an accused fled from the vicinity where a crime was committed, and having knowledge that he was likely to be arrested for the crime or charged with its commission, or suspected of guilt in connection therewith, may be shown as a circumstance of guilt, and may be considered in connection with other evidence or circumstances tending to connect the accused with the commission of the offense. But it is only a circumstance. It alone will not justify conviction of the defendant, in the absence of other evidence tending to connect him with the commission of the crime. 8 R. C. L. 192. A leading and well-considered case on the subject to that effect is *State* v. *Poe*, 123 Iowa 118, 98 N. W. 587, 101 Am. St. Rep. 307. To that effect also are *People* v. *Wong Ah Ngow*, 54 Cal. 151, 35 Am. Rep. 69; *Smith* v. *State*, 106 Ga. 673, 32 S. E. 851, 71 Am. St. Rep. 286. There is the further circumstance, the statement of the defendant to the city marshal that at the time of the commission of the offense he was in Salt Lake City and disputed by the testimony of the witness that just after the fire the defendant was at Castlegate and the testimony of another witness that at 8 o'clock on the morning of the fire he was

seen at Provo, about 73 miles from Helper; and about 45 miles from Salt Lake City; a claimed alibi being a shield or weapon of defense, which, if disbelieved or discredited, may not be turned by the state into an offensive weapon or as affirmative proof connecting the accused with the commission of the offense. There being no direct evidence connecting the defendant with the commission of the offense—no such evidence is claimed by the state—and considering all of the suspicious or shown circumstances together, we are of the opinion that the evidence is insufficient to connect the defendant with the commission of the offense and to let the case to the jury.

The court, among other things, charged the jury:

"In determining the guilt or innocence of the accused you must determine if the fire was of incendiary origin. That is, whether or not the defendant wilfully set fire to and burned the insured property *or aided, counseled or procured said burning,* and in determining the incendiary nature of the fire you may take into consideration all the facts and circumstances in connection with the fire including an explosion if you find such to be the fact. But in this connection the Court instructs you that the fact, if you so find it, that there was an explosion, does not necessarily and conclusively prove that the fire was of incendiary origin. Where the cause of a fire is not shown the law presumes that the cause was accidental and was not the deliberate act of any person, and unless the State has shown by a clear preponderance of the evidence that the fire was started by a wilful act, you must presume that the explosion was accidental, or if there remains a reasonable doubt in your mind as to the origin of the fire, then it is your duty to give the defendant the benefit of that doubt and find that the fire was caused by accidental or natural causes." (Italics ours.)

The charge in substance is as was requested by the defendant, except that the court added the words italicized, "or aided, counseled or procured said burning," to which modification the defendant excepted. It is ▮▮▮ urged that neither by the information nor by the evidence was such a modification of the charge pertinent; that the information charged that the defendant by his

own act willfully, etc., set fire to and burned the building and the goods contained therein, and that there is not anything alleged that he aided or counseled or advised another to commit the act, or that one other than the defendant committed it; and likewise that there is no evidence to show, nor was there any claim made by the state, that another committed the offense or that the defendant counseled, aided, or procured another to commit it; and that therefore such modification of the charge was erroneous and prejudicial. We think the contention is well founded and that there is no evidence to render such a charge pertinent, nor does the state point to any evidence justifying a modification of the request in the particular complained of. In the case of *State* v. *Baum*, 47 Utah 7, 151 P. 518, 519, the court instructed the jury that:

"All persons concerned in the commission of a crime, whether it be a felony or misdemeanor, and whether they directly commit the act constituting the offense, or aid and abet in its commission, or, not being present, have advised and encouraged its commission, are principals in any crime so committed."

With respect thereto this court held:

"Such a charge may be proper enough in a proper case, but the court had no such case before it. There were neither pleadings nor evidence to render such a charge pertinent. What the state charged was that the defendant directly entered the building and took the goods therefrom; and what it claimed by its evidence was that he, with two others, directly entered and took the goods—directly committed the offense. There was no evidence to show, and no one claimed, that the defendant but aided or abetted in the commission of the offense, or, not being present, advised or encouraged its commission. There, hence, was no occasion to give that kind of a charge. Under the circumstances, we think it was misleading and harmful."

The Baum Case in such particular was approved and followed in the case of *State* v. *Siddoway*, 61 Utah 189, 211 P. 968. To the same effect are the cases of *State* v. *Gordon*, 28 Utah 15, 76 P. 882; *People* v. *Savinovich*, 59 Cal. App. 240, 210 P. 526; *State* v. *Furthmyer*, 128 Kan. 317, 277 P. 1019;

*People* v. *Sheffield,* 108 Cal. App. 721, 293 P. 72, 77; *Territory* v. *Claypool,* 11 N. M. 568, 71 P. 463; *People* v. *Roe,* 189 Cal. 548, 209 P. 560. It is familiar doctrine that it is erroneous to give instructions based on a state of facts of which there is no evidence tending to prove, though such instructions abstractly contain correct statements of the law. We here think, as was stated in *State* v. *Baum,* that the giving of the instruction as modified was erroneous and prejudicial.

In the information it was alleged that the personal property in the building and owned by the defendant was insured against loss by fire by the Royal Insurance Company, a corporation of Liverpool, and that the defendant willfully, etc., set fire to and burned and destroyed such personal property "with the intent to defraud and prejudice said insurance company." A further point is made that no evidence was given to show that the company was a corporation of any kind or a company of any legal entity. In support of such contention the appellant cites and relies on the case of *State* v. *Brown,* 33 Utah 109, 93 P. 52. In that case the defendant was charged with willfully, etc., uttering, publishing, and passing as true and genuine a false and counterfeiting bank check, "with intent to prejudice, damage and defraud the Utah-Apex Mining Company, a corporation, organized under the laws of Main." No competent evidence was given that the Utah-Apex Mining Company was a corporation. It was held that the allegation that the mining company was a corporation was material, and that no competent evidence was given to show that it was a corporation, and for that reason the judgment was reversed and the case remanded for a new trial. The statute, Comp. Laws Utah 1917, § 8989, provides that if, upon a trial or proceeding in a criminal case, the existence or powers of any corporation shall become material, "or be in any way drawn in question," it is not necessary to produce a certified copy of the articles or acts of incorporation but that the same may be proved "by general reputation," or by the printed statutes of the state or country by which

the corporation was created. The section of the statute in such respect is the same as was section 4859, Rev. Stats. Utah 1898, considered in the Brown Case.

In the case in hand no evidence whatever was given as to the corporate existence of the Royal Insurance Company, nor as to its legal entity. We do not well see wherein this case may be distinguished from the Brown Case. If in the Brown Case the court below erred in refusing to direct a verdict, it likewise should be held that the court erred in such particular in this case. The only ground urged by the state in resisting the contention of the appellant is that the policy of insurance, which was put in evidence, on its face showed "that the Royal Insurance Company of Liverpool, England," was a corporation. But the policy cannot be classed as an ancient document and as proving itself.

*People* v. *Morley,* 8 Cal. App. 372, 97 P. 84, 85, is cited to support the state's contention. It there was held that:

"The policy of insurance issued to and received by defendant Morley, which is in the record, and which appears never to have been by her transferred, stated upon its face that the insurance company was incorporated A. D. 1845, and a witness testified that he was in the employ of the Royal Insurance Company, a corporation. This was sufficient to establish the de facto character of the insurance corporation."

As to that let the Brown Case be read. There a witness testified that he was interested in the Utah-Apex Mining Company and that it was a corporation organized under the laws of Maine, and that it carried on the business of mining in Utah. But this court held such evidence incompetent, and that it did not suffice; that in a criminal case, and because of the statute, the corporate existence of a corporation was required to be proved by a certified copy of the articles of incorporation or by general reputation or by printed statutes of the state or country by which the corporation was created, and that the testimony of the witness did not show "general reputation," the method sought by the state to show the existence of the corporation, nor was the existence

shown by articles or acts of incorporation or by printed statutes. Adhering to the Brown Case as we do, it follows that under the statute there was no proof of the corporate existence of the alleged insurance company. That the allegation in the information of the corporate existence of the company is material is not questioned by the state. The language of the statute is that if, upon a trial in a criminal case, the existence of a corporation "shall become material or be in any way drawn in question," its corporate existence may be proved as by the statute provided. Nor was there any proof made of such existence. The assignment is well taken and is allowed.

Thus for the reasons stated the verdict is set aside, the judgment reversed, and the case remanded for a new trial.

EPHRAIM HANSON, and MOFFAT, JJ., concur.

ELIAS HANSEN, J., concurs in result.

FOLLAND, J.

I concur in results. Believing there was sufficient evidence to take the case to the jury, I do not concur in that part of the opinion wherein is discussed the point of insufficiency of the evidence to connect the defendant with the commission of the offense.