Argued January 23, affirmed February 19, 1970. Petition
for review denied by Supreme Court
April 21, 1970

STATE OF OREGON, *Respondent, v.*
WALLACE TAYLOR RUTHERFORD, *Appellant.*

465 P. 2d 243

*E. Scott Lawlor*, Eugene, argued the cause and filed the brief for appellant.

*Michael E. Murphy*, Deputy District Attorney, Eugene, argued the cause for respondent. With him on the brief was John B. Leahy, District Attorney, Eugene.

Before Schwab, Chief Judge, and Langtry and Foley, Judges.

LANGTRY, J.

Defendant was convicted of assault with a dangerous weapon, ORS 163.250, and appeals. Evidence which the jury could have believed showed that the defendant and a companion went into a store at about 2:00 a.m.,

and purchased a package of potato chips. The attendant thought the defendant had shoplifted a bottle of wine, and followed him outside. An altercation ensued during which the attendant took from defendant a bottle of wine which he put on a nearby display. That bottle broke and defendant had part of the broken bottle in his hand as he attacked the attendant. The attendant testified that another bottle of wine fell from defendant's belt line down his pant leg and broke. Police arrived and defendant was arrested.

Defendant's first attorney withdrew after the trial and another was appointed, before sentence, at public expense. The form affidavit of defendant supporting the appointment, dated January 9, 1969, stated defendant's income for the preceding year was $4400, and that no money was owed to defendant.

On January 31, 1969, a second form affidavit supporting the appointment was filed. In it, defendant showed nothing under income for the preceding year, but showed both "no" and "$2500-$3000" under "Are you owed any money" immediately below the earnings space. The appointment of the second attorney occurred on January 13, 1969. A sentence of 60 days in jail was imposed on February 3, 1969. On February 4, 1969, bail on appeal was set at $500. A professional bail bond in this amount, presumably paid for by defendant and dated February 3, 1969, was filed February 5, 1969.

On February 27, 1969, the second attorney was appointed for the appeal at public expense, and on March 4, 1969, upon this attorney's application, the court ordered an original and two copies of the transcript to be furnished. We think this record raises a question about defendant's indigency, and whether his appeal,

or all of it, should be paid for by the public.[1] However, the trial court presumably made inquiry into defendant's ability to pay, and properly exercised its discretion.

On June 23, 1969, an order settling the transcript was entered, with no motion "to correct or alter the transcript" having been made. The transcript consists of 330 pages.

The first assignment of error concerns venue. The only proof of venue was that the alleged crime occurred at "Sherm's 24 Hour Market, located at Four Corners, Eugene area." The court instructed the jury:

> "I instruct you that the Four Corners is within the city limits of Eugene and the city limits of Eugene are entirely within Lane County, Oregon.
> "I further instruct you that the northern boundary of Lane County is approximately eleven miles from this courtroom and the southern boundary of Lane County is approximately thirty miles, the northern boundary is approximately nine miles or eleven miles north of this courtroom, and the southern boundary of Lane County is approximately thirty miles south of this courtroom. The eastern boundary of Lane County is the summit of the Cascade Mountains and the western boundary is the Pacific Ocean."

In *State v. Cooksey*, 242 Or 250, 409 P2d 335 (1965) and *State v. Jones*, 240 Or 129, 400 P2d 524 (1965), similar points were raised. In *Cooksey*, the court said:

> "* * * The location of the boundaries * * *

---

[1] Leslie L. Anderson, in *The Public Defender and other Suggested Systems for the Defense of Indigents* 242 (Vol. 53, No. 6, JUDICATURE January 1970), says:

"* * * The meaning of indigency is broadening. * * * The ABA committee recommendation * * * is: 'Counsel should be provided to any person who is financially unable to obtain adequate representation without substantial hardship to himself or his family.' "

is not information of which jurors can take notice without proof thereof *or a declaration by the court."* (Emphasis supplied.) 242 Or at 252.

▪■ Under ORS 136.310, facts of which the court takes judicial notice must be declared to the jury if a jury finding is to be based thereon. The instruction, although it contains surplusage (all of the second paragraph) and is not artfully drawn, was sufficient to fulfill the requirements of venue. During the trial, the oversight in proving venue in the usual manner was pointed out by the court to Mr. Horton, the prosecutor, immediately after he rested his case. Had he not refused to acknowledge his oversight, he would have moved to reopen his case, and made a correction with one or two questions to an appropriate witness.

The second assignment of error is that because the court reporter failed to report the attorney's opening and part of the closing statements, defendant was "prevented from prosecuting his appeal."

ORS 8.340(2) provides:

"Upon the trial of *any cause*, the judge upon his own motion may, and upon the request of either party shall, order a report of the proceedings * * *." (Emphasis supplied.)

■ The record does not show, and it is not claimed, that any request was made for reporting opening statements and closing arguments until some time during the prosecution's rebuttal argument, after which the argument was reported. In *Hoffart v. Lindquist & Paget Mortg. Co.*, 182 Or 611, 616, 189 P2d 592 (1948), the court said that the trial judge may "authenticate a report of the testimony, whether there is an official reporter or not." We think this statement applies to arguments as well as testimony. The record shows no

effort was made to have the trial judge authenticate a record of the unreported parts of the statements and argument. We believe that in all criminal proceedings the court should order a complete report, including jury *voir dire*, opening statements and closing arguments, unless defendant and his counsel specifically waive them, which waiver should be reported. However, the record we have covers the matters about which defendant assigns error, as our discussion under the third assignment will indicate. Therefore, regardless of the failure of counsel to protect the record, defendant has not been prevented from adequately presenting his appeal.

The third assignment of error is that the trial court erred in denying defendant's motion for a new trial. Several grounds, supported by affidavits and having to do with the conduct of the trial, were set out in the motion.

    (1). A juror became ill during deliberations, resulting in prejudice to defendant.

    (2). The prosecutor made prejudicial remarks to the jury.

    (3). The defendant was not present in the courtroom during part of the trial.

    (4). Evidence was insufficient to support the verdict.

■ (1). The affidavit of the bailiff shows that one of the jurors had diebetic symptoms during deliberations, the matter was reported to the judge, and the court offered to feed her as an aid to her condition. She refused the aid and deliberations continued until a verdict was reached. We find no basis for reversing the trial court on its exercise of discretion on this point. *State v. Tracy*, 246 Or 349, 356, 425 P2d 171 (1967).

(2). The prejudicial statements alleged are that (a)

the prosecutor argued his personal opinion to the jury; (b) he argued about the defendant not having made a "statement" about the alleged crime before trial, and (c) he argued that there was a plan between defendant and his companion to divert attention while the wine was taken, and this was unsupported by evidence.

■ As to (a), defendant's counsel objected to arguments of the prosecutor when he said, "I think" and "I firmly believe" about the testimony of witnesses. In answer to the objection, the court agreed with defendant's counsel that the statements were improper, and said:

> "* * * But I think in view of your own argument in which you expressed your own personal convictions * * * I will permit this argument * * *."

Apparently, both counsel violated the Code of Professional Responsibility 88, DR 7-105 (C) (4) (ABA Committee on Evaluation of Ethical Standards, Final Draft 1969):

> "(C) In appearing in his professional capacity before a tribunal, a lawyer shall not:
> "* * * * *
> "(4) Assert his personal opinion * * * as to the credibility of a witness * * * or as to the guilt or innocence of an accused * * *."

In this regard, our discussion of a similar situation in *State v. Miller*, 1 Or App 460, 460 P2d 874 (1969) Sup Ct *review denied* (1970), is applicable. We do not believe the mutual breach of ethics prejudiced defendant, particularly in view of the cautionary instructions given by the court.

■ (b). We do not believe this argument was unjustified, for the defendant in his testimony complained

that when the police car drove up, he stood around waiting for the police to ask him "what was going on," and they never did so. He testified, "I was waiting for my turn to give some explanation. It was never asked for. It seemed to be unwanted. No one asked me anything * * *." If the police had asked him for an explanation and he had replied the defendant would be in a position to complain that the police violated his constitutional rights against incrimination and interrogation without counsel being present. In any event, when the prosecutor's remark was made in argument, the court sustained the objection by Mr. Dwyer, the defendant's attorney, and corrected any possible error by instructing the jury:

"* * * You are not to concern yourself with * * * whether he made any statements * * * disregard anything counsel may say on that subject."

■ (c). The transcript shows adequate evidence from which the jury could draw an inference that there was a plan to divert attention, and it was proper for the prosecution to argue the inference.

■ (3). Defendant's affidavit about his not being in the courtroom during part of the trial is so indefinite as to be useless. From its face, it appears that if the defendant was absent at all, he may have left the courtroom, unnoticed, perhaps hoping to inject error into the case.

■ (4). The evidence required the case to be submitted to the jury.

Although the trial fell short of being a model, the court's corrective instructions were prompt and adequate. *State v. Jackson*, 221 Or 315, 323-24, 351 P2d

439 (1960). We cannot say that the record shows prejudicial error, singular or cumulative, to justify a reversal.

Affirmed.